Alan SEDGWICK

v.

**SUPERIOR COURT FOR the DISTRICT OF COLUMBIA, Appellant.**

No. 76–1967.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 12, 1977.

Decided July 25, 1978.

As Amended Sept. 29, 1978.

Robert Fabrikant, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Oscar Altshuler and Edward D. Ross, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellant.

W. Gary Kohlman, Washington, D. C., with whom Frederick H. Weisberg, Jeffrey Freund and Silas Wasserstrom, Washington, D. C., were on the brief, for appellee.

Before BAZELON, LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by LEVENTHAL, Circuit Judge.

**LEVENTHAL, Circuit Judge:**

In this action, a petition for habeas corpus brought against the Superior Court of the District of Columbia, the District Court granted the petition and the government took a timely appeal.[1] The issuance of the writ was grounded on the Double Jeopardy Clause of the Constitution.[2] The order precludes the trial of petitioner-appellee for various crimes—burglary, robbery, assault with intent to rape, assault with a dangerous weapon, and assault with intent to kill—arising out of a break-in in the Dupont Circle area in 1972.

■ We were troubled by the issue of jurisdiction and called for memoranda on that point. We conclude that the District Court had jurisdiction to entertain the petition for habeas corpus since petitioner is not a person who has been convicted in the Superior Court.[3] However, we disagree with the District Court's judgment and accordingly reverse.

Petitioner was originally brought to trial in the Superior Court before Judge William Stewart. In the course of the trial, a *Brady* question arose which the judge felt cast a shadow on the proceedings. During the government's case in chief, Officer Edward L. Allen, while relating the circumstances surrounding petitioner's controverted confession, testified that during his investigation of the break-in he had received information that one "Duvall" had been overheard in two local bars claiming he committed the offenses. Officer Allen stated that he did not regard the tip as reliable, but nevertheless recorded the interview on a police department form PD–252. He also visited the two bars but could obtain no corroborating information. A check of the police department's nickname file revealed some 30 "Duvalls", and the matter was not pursued after petitioner's arrest and alleged confession.

The trial court examined the PD–252 and concluded that it should have been disclosed to the defense under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The court *sua sponte* granted a mistrial. If the defendant had asked for a mistrial, the court's ruling would not raise a double jeopardy issue.[4] Instead, defense counsel pressed the court for dismissal of the indictment. The defendant now contends that since he did not move for a mistrial notwithstanding the judge's indication that such a motion would be granted, and since he did not explicitly state that he acquiesced in the mistrial, he must be determined to have objected to the granting of the mistrial, thus entitling him to raise the double jeopardy issue.

---

1. The appellee argues that this appeal is untimely because it was not filed within 30 days of the judgment as required by Fed.R.App.P. 4(a). But that rule is subject to an exception that provides that "if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days of such entry." Although the nominal party in this case is the Superior Court of the District of Columbia, that court is represented on this appeal by the U.S. Attorney. Significantly, the original prosecution in the Superior Court was in the name of the United States. This case might just as well have been brought as a suit to enjoin the United States Attorney from maintaining the prosecution. The real party in interest is the United States or the United States Attorney, for purposes of application of Fed.R.App.P. 4(a). Accordingly, this appeal, filed 48 days after judgment, was timely.

2. *Sedgwick v. Superior Court*, 417 F.Supp. 386 (D.D.C.1976).

3. This court *sua sponte* called for memoranda on the issue of jurisdiction of the District Court in view of the Supreme Court's opinion in *Swain v. Pressley*, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). In *Swain* the Supreme Court held that D.C.Code § 23–110(g) removed federal habeas corpus jurisdiction from the federal courts for persons *convicted* in the District of Columbia Superior Court. But in this case habeas corpus relief is not sought by a person convicted in Superior Court. A mistrial was called and the case never went to the jury. The Supreme Court in *Swain* ruled that D.C.Code § 23–110 must be applied in accordance with its plain language. 430 U.S. at 378, 97 S.Ct. 1224. That section pertains to "[a] prisoner in custody under sentence of the Superior Court." D.C.Code § 23–110(a) (1973). Thus in the present case the plain language reading prescribed by the Supreme Court preserves the District Court's habeas corpus jurisdiction.

4. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

We need not concern ourselves here with the issue that might arise where a judge acts sua sponte to grant a mistrial, in the absence of any motion by the defendant; this would raise the question whether the silence of the defendant falls short of acquiescence, and bars a new trial unless the mistrial was a matter of "manifest necessity."[5] The government stresses that in any event where, as here, the defendant has put a motion to the trial judge asking for relief (e. g., dismissal), he has an obligation to make his ultimate position clear. That is, if the defendant seeks only a dismissal, and does not want the judge to consider the possibility of granting the lesser relief of a mistrial even if the dismissal is denied, he must state that position explicitly.

In substance this was the position taken in this case by the District of Columbia Court of Appeals. One month after declaring a mistrial, the trial court heard testimony on both the defense and prosecution's unsuccessful attempts to follow up the "Duvall" lead. The trial court concluded that the conduct of the prosecution and the passage of time had deprived the defendant of the benefit of the purported *Brady* material. It therefore dismissed the indictment. The District of Columbia Court of Appeals reversed, holding that the government had not violated *Brady* and that a new trial was not barred by the Double Jeopardy Clause. *United States v. Sedgwick*, 345 A.2d 465 (D.C.App.1975), *cert. denied*, 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976). It found the undisclosed information mere "street rumor" and not properly *Brady* material.

The Double Jeopardy Clause gives the defendant a "valued right to have his trial completed by a particular tribunal."[6] The defendant's right to receive a verdict is such that "[e]ven when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire 'to go to the first jury and, perhaps, end the dispute then and there with an acquittal.'"[7] Here the defendant did not express an interest in obtaining a verdict from the first jury. In fact defense counsel pressed for dismissal, arguing that the defendant's "right to a fair trial ha[d] been seriously undermined" by the Government's failure to disclose the purported *Brady* material.[8]

■ We are instructed not to apply the Double Jeopardy Clause mechanically, but to look beyond the labels of trial motions and rulings to discern the actual intentions

5. The established principle is that a mistrial granted over the defendant's objection will bar a new trial unless there is "manifest necessity" for the mistrial, "or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *see United States v. Dinitz*, 424 U.S. 600, 606–08, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville*, 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 481, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion).

6. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *see United States v. Jorn*, 400 U.S. 470, 480–81, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion). In *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978), the Supreme Court reemphasized a defendant's interest in obtaining a verdict from the first jury.

Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.
Footnotes are omitted.

7. *United States v. Dinitz*, 424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976) (quoting *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion)).

8. Trial Tr. of November 19, 1973, at 26.
The only expressed rationale underlying the preference for dismissal to mistrial is set out by defense counsel on page 39 of the trial transcript.
This trial has already extended way beyond the time alloted (*sic*) to it, and I have personally already missed several other trials, and I have a full plate of trials, including several murder trials, between now and Christmas. No objection to the mistrial was raised on double jeopardy grounds until after the mistrial was declared. Trial Tr. of Nov. 19, 1973, at 44.

of the parties and trial court.[9] Such an approach in this case impels the conclusion that the defendant was not interested in obtaining a verdict from the first jury. Therefore we do not believe that permitting a retrial in this case does violence to the values underlying the Double Jeopardy Clause.[10]

The defendant also relies on Judge Stewart's order—subsequent to the declaration of mistrial—in which he granted defendant's request for a dismissal of the indictment on the ground that the passage of time and other circumstances made the *Brady* violation incurable and precluded a fair trial. Judge Stewart indicated that if his dismissal on *Brady* grounds were reversed on appeal, the defendant would be subject to trial.[11] Nevertheless, the defendant argues that Judge Stewart's order of dismissal operates, as a matter of law, to bar retrial. Upon reviewing the Supreme Court's recent pronouncements in this area, we disagree.

In *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), the Supreme Court, in an opinion by Justice Powell, held that a retrial was not barred by the Double Jeopardy Clause in a case where the trial court had dismissed the information during the first trial for failure to allege the requisite intent. Defense counsel had made his objection to the information after the prosecutor's opening statement, a time when the trial court could not readily furnish full consideration. The court therefore tentatively denied the motion, noting that he would reconsider it at his first opportunity to research the point. That opportunity came after the government presented its case, and the court dismissed the information.

The Supreme Court distinguished its earlier opinion in *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), where it had found a dismissal did bar retrial.

The distinction drawn by *Jenkins* does not turn on whether the District Court labels its action a "dismissal" or a "declaration of mistrial." The critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged. A mistrial ruling invariably rests on grounds consistent with reprosecution, see *United States v. Jorn*, 400 U.S. 470, 476[, 91 S.Ct. 547, 27 L.Ed.2d 543] (1971) (plurality opinion), while a dismissal may or may not do so. Where a midtrial dismissal is granted on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged, *Jenkins* establishes that further prosecution is barred by the Double Jeopardy Clause.

432 U.S. at 30, 97 S.Ct. at 2146.

*Jenkins* was a case involving refusal to submit to induction into the Armed Services. Under the law of the Second Circuit existing at the time of the offense, the induction order was improper and the defendant could not be convicted. Between the time of the offense and the date of trial, the Supreme Court reversed the Second Circuit: induction orders such as the one at issue in *Jenkins* were now prop-

---

9. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

10. *See also United States v. Beckerman*, 516 F.2d 905, 908–09 (2d Cir. 1975); *United States v. Gentile*, 525 F.2d 252, 253–58 (2d Cir. 1975), cert. denied, 425 U.S. 903, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976) (Friendly, J.).

11. In this case Judge Stewart suggested that he did not regard the granting of defendant's motion as ending all possible prosecution. He in fact invited the U.S. Attorney to appeal.

The Court is well aware in granting a motion, that it could well be dismissing an indictment against a person who, on the basis of evidence produced in open court, might be guilty of serious offenses, and this Court does not relish it, but that cannot form the basis of the legal issue that is presented here.

I think that it's important in the administration of justice, from the standpoint of this very important issue as to what is or is not *Brady* material, that the matter be resolved by the highest court of D.C. The Court invites the United States attorney to consider and do as the United States attorney feels appropriate in that regard.

Trial Tr. of January 15, 1974, at 36–37.

er. The District Court concluded that retroactive application of the Supreme Court's decision would be unfair, "eroding fundamental and basic equitable principles of law," and dismissed the indictment. *United States v. Jenkins*, 349 F.Supp. 1068, 1073 (E.D.N.Y.1972). The Supreme Court ruled that a government appeal from that dismissal would violate the Double Jeopardy Clause.[12] The *Lee* opinion characterized the *Jenkins* dismissal as one that "contemplate[d] an end to all prosecution of the defendant for the offense charged," and was granted on the ground "that the defendant simply cannot be convicted of [that] offense."

The Supreme Court in *Lee* found no such impediment to retrial. They observed that the dismissal was not predicated on a judgment that Lee could never be prosecuted or convicted.

> To the contrary, the District Court stressed that the only obstacle to a conviction was the fact that the information had been drawn improperly. The error, like any prosecutorial or judicial error that necessitates a mistrial, was one that could be avoided—absent any double jeopardy bar—by beginning anew the prosecution of the defendant. And there can be little doubt that the court granted the motion to dismiss in this case in contemplation of just such a second prosecution.

432 U.S. at 30–31, 97 S.Ct. at 2146.

But there was some confusing language in *Jenkins*, heavily relied on by appellee in this case, that appeal was barred if "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand." 420 U.S. at 370, 95 S.Ct. at 1013.

This language suggested that a dismissal that did not follow some ruling on the sufficiency of the evidence would bar a government appeal and retrial, since a remand would require further factfinding by the court or jury. This aspect of *Jenkins* was not discussed in *Lee*. Nor was it clear what was meant by the *Lee* gloss on *Jenkins*: that a dismissal be based on the ground "that the defendant simply cannot be convicted of the offense charged." The analytical uncertainty in the case law was resolved when the Supreme Court overruled *Jenkins* in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). As acknowledged in *Swisher v. Brady*, —— U.S. ——, ——, 98 S.Ct. 2699, 2708, 57 L.Ed.2d 705 (1978), "any language in *Jenkins* must now be read in light of [the] subsequent decision in *United States v. Scott* . . . ."

*Scott* involved a midtrial dismissal predicated on prejudicial preindictment delay. The Court emphasized that such a determination was not based on any finding of guilt or innocence. It concluded:

> We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant. . . . Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.

98 S.Ct. 2197–98. *Scott* reemphasized language in *United States v. Martin Linen*

---

**12.** The right of government appeal in criminal cases is inextricably bound up in double jeopardy considerations. 18 U.S.C. § 3731 (1976):

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

For the District of Columbia courts the applicable local provision simply states:

> The United States or the District of Columbia may appeal an order dismissing an indictment or information or otherwise terminating a prosecution in favor of a defendant or defendants as to one or more counts thereof, except where there is an acquittal on the merits.

D.C.Code § 23–104(c) (1973).

*Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), that the central task in double jeopardy cases was to "determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct, or not, of some or all of the factual elements of the offense charged." [13] It explicated the requirement in *Lee* by indicating that only acquittals based on some finding that the evidence is insufficient to convict will bar retrial.[14]

In sum, in recent years the Supreme Court has given considerable attention to

the Double Jeopardy Clause,[15] and the lines of the Supreme Court's analysis are now sufficiently clear to be determinative in the instant case. A dismissal on *Brady* grounds is not a holding that "the Government ha[s] not produced sufficient evidence to establish the guilt of the defendant." *United States v. Scott*, 98 S.Ct. at 2195. The central teaching of *Scott* is that a dismissal does not bar government appeal and retrial unless it is premised on some *factual* determination of the insufficiency of evidence of defendant's guilt.[16] While access to *Brady* material might establish innocence, or more

---

**13.** 430 U.S. at 571, 97 S.Ct. at 1354. The issue in *Martin Linen Supply* was the appealability of a Fed.R.Crim.P. 29(c) judgment of acquittal delivered after the discharge of a deadlocked jury in a criminal contempt case. The Court, in an opinion by Justice Brennan, suggested that the question was whether the acquittal was based on some judgment as to guilt or innocence.

> The District Court plainly granted the Rule 29(c) motion on the view that the Government had not proved facts constituting criminal contempt. The Court made only too clear its belief that the prosecution was " 'the weakest [contempt case that] I've ever seen.' " . . . In entering the judgments of acquittal, the court also recorded its view that " 'the Government has failed to prove the material allegations beyond a reasonable doubt' " and that " 'defendant should be found "not guilty." ' "

*Id.*, at 572, 97 S.Ct. at 1355 (footnotes and citations omitted).

**14.** *United States v. Scott*, 98 S.Ct. at 2196–97:

> Despite respondent's contentions, an appeal is not barred simply because a ruling in favor of a defendant "is based upon facts outside the face of the indictment," . . . or because it "is granted on the ground . . . that the defendant simply cannot be convicted of the offense charged," *Lee, supra*, 432 U.S., at 30, [97 S.Ct. 2141]. . . . Rather, a defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged," *Martin Linen, supra*, 430 U.S., at 571[, 97 S.Ct. 1349.] . . . Where the court, before the jury returns a verdict, enters a judgment of acquittal pursuant to Fed.Rule Crim. Proc. 29, appeal will be barred only when "it is plain that the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to support a conviction." *Id.*, 430 U.S. at 572, 97 S.Ct. at 1355. . . .

**15.** *See generally* Note, *Mistrials and Double Jeopardy*, 15 Am.Crim.L.Rev. 169 (1977).

**16.** Other Supreme Court cases emphasize the centrality of the culpability principle. *See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (retrial barred where conviction was reversed by appellate court for insufficient evidence to sustain jury's verdict); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (same); *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977) (dismissal of information barred government appeal where trial court found on stipulated set of facts that government information failed to state offense).

Commentators have noted that considerations of culpability have also figured prominently in the Court's developing habeas corpus and due process doctrines, epitomized in cases like *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *See, e. g.*, Cover & Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court*, 86 Yale L.J. 1035, 1086–1100 (1977) (discussing evolving doctrine that only constitutional claims bearing relation to prisoner's innocence should be cognizable in habeas corpus proceedings, and not claims, such as those predicated on the Fourth Amendment exclusionary rule, which are the products of concerns about legal administration); Underwood, *The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases*, 86 Yale L.J. 1299, 1338–47 (1977) (analyzing role of culpability criterion in delineating facts subject to due process requirement of "proof beyond a reasonable doubt").

In *Scott*, the Court quoted from *Stone v. Powell* with the comment: "In other circumstances, this Court has had no difficulty in distinguishing between those rulings which relate to 'the ultimate question of guilt or innocence' and those which serve other purposes." 98 S.Ct. at 2197 n.11.

accurately might raise a reasonable doubt as to defendant's guilt, a dismissal pursuant to *Brady* does not itself negative criminal responsibility. In this critical aspect, it is similar to the dismissal for prejudicial preindictment delay in *Scott.* A dismissal or mistrial ruling predicated on *Brady* and granted on defendant's motion [17] is, therefore, answerable to appellate review and does not bar retrial if the appellate court finds no *Brady* violation.[18]

We conclude defendant is subject to trial.

*Reversed.*

---

17. Because the dismissal in this case (subsequent to the mistrial ruling) was granted at the defendant's request, there is no "manifest necessity" requirement. *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

18. Our analysis of the double jeopardy implications of the dismissal provides some illuminating "feedback" on our conclusions regarding the mistrial. Even had Judge Stewart initially granted a dismissal, as requested by defendant, rather than a mistrial, his order would have been subject to review by the District of Columbia Court of Appeals at the government's instance. Therefore, as a practical matter, the defendant was not prejudiced by the mistrial ruling.