**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard B. SANDERS,**
**Defendant-Appellant.**

No. 78–2390.

United States Court of Appeals,
Ninth Circuit.

Feb. 28, 1979.

---

Calvin J. Stacey, Billings, Mont., for defendant-appellant.

Lorraine D. Gallinger, Asst. U. S. Atty., Billings, Mont., for plaintiff-appellee.

Before MOORE,* WRIGHT and CHOY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Sanders was convicted under 18 U.S.C. § 495 (1976), for uttering a United States Treasury check, knowing that it was falsely endorsed. He appeals, contending: (1) that his second trial was barred by the double

* Senior Circuit Judge for the Second Circuit.

jeopardy clause of the Fifth Amendment; (2) that he was denied due process because the district court would neither allow him to call a specific witness nor declare her unavailable so that her prior recorded testimony could be read into the record; and (3) that the court erred in admitting testimony of threats allegedly made by Sanders to a prosecution witness.

Because we conclude that the conviction must be reversed on double jeopardy grounds, we do not reach the remaining issues.

## FACTS

A jury was empaneled and sworn for Sanders' trial on May 1, 1978. Testimony was first taken on May 5. Three government witnesses testified that an unendorsed treasury check payable to Danny Hope disappeared from Hope's truck in Hardin, Montana; that Sanders was in Hardin at about that time; and that Sanders was photographed while cashing Hope's falsely endorsed check. The fourth prosecution witness, Rowena Standing Alone, testified that Sanders came to her home with the check and that after she, her former husband (Little Whiteman), and Kenneth Wolfblack refused to sign it, Sanders falsely endorsed the check.[1]

Defense counsel then asked Standing Alone to submit an example of her handwriting for expert comparison with the forged endorsement. She agreed, asserting that she had not endorsed the check. The court granted Sanders' motion for a continuance to May 12, 1978 to allow time for the handwriting analysis.

When court reconvened, the judge announced to the jury that, because the results of the comparison suggested that Standing Alone probably had endorsed the check, she had been indicted for perjury and for forging the endorsement. He then declared a mistrial *sua sponte* over Sanders' objection

in the interest of justice . . . so that at least in [the court's] mind there would be no prejudice as far as the defendant is concerned with a new jury, having testimony that [the court] think[s] was tainted because of the testimony that came in from the witness, Rowena Standing Alone.

The judge denied a defense motion for dismissal and set a new trial date of May 15.

After a second jury was empaneled Sanders filed a motion to dismiss on double jeopardy grounds. The motion was denied. The judge then granted the government's motion to prevent Standing Alone from being called as a witness, on the ground that requiring her to testify would violate her privilege against self-incrimination. He denied Sanders' motion to declare Standing Alone to be an unavailable witness so that her prior recorded testimony could be read into the record pursuant to Fed.R.Evid. 804. He also denied Sanders' motion to prevent witness Wolfblack from testifying about threats allegedly made to Wolfblack by Sanders.

At the second trial Sanders' defense consisted of attacking the credibility of the prosecution witnesses by demonstrating the relationships among them and by suggesting reasons why they might want to incriminate Sanders. The district court prohibited any cross-examination referring to Standing Alone or her involvement. The jury returned a guilty verdict.

## DOUBLE JEOPARDY

■ Sanders contends that the district court abused its discretion in declaring a mistrial over his objection. He argues that there was no need for the mistrial because an integral portion of his defense was to cast doubt on the credibility of Standing Alone and the other witnesses related to her.

---

1. Standing Alone's testimony was vivid. She stated that Sanders "took a blue, skinny pen and signed the check, Danny Hope." Reporter's Transcript at 33. When asked if she had doubts about her testimony, she said, "No doubt in my mind. I seen him with my own two eyes." *Id.* at 35.

■ In a jury trial, "jeopardy attaches when the jury is empaneled and sworn." *Crist v. Bretz,* 437 U.S. 28, 29, 98 S.Ct. 2156, 2157, 57 L.Ed.2d 24 (1978).[2] The defendant, at that point, has a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed.2d 974 (1949), *quoted in Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Illinois v. Somerville,* 410 U.S. 458, 466, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); and *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).[3]

■ A defendant clearly may not be reprosecuted for the same crime after an acquittal. *Benton v. Maryland,* 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). In some instances, however, a court may have to discharge a jury before it makes a decision on guilt or innocence. Discharge in such cases will not necessarily operate to the defendant's disadvantage, and may even be at the defendant's behest.[4]

■ When the jury is discharged before a determination on the merits, a court must balance the defendant's right to have the trial completed by a specific tribunal against "the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830, *citing United States v. Jorn,*

400 U.S. at 479–80, 91 S.Ct. 547. However, because the defendant's right is of constitutional origin, the prosecutor has a heavy burden to meet in seeking reprosecution after a mistrial over the defendant's objection. The prosecutor must demonstrate that the mistrial resulted from "manifest necessity." *Id.*[5]

■ The words " 'manifest necessity' . . . do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." 434 U.S. at 505–06, 98 S.Ct. at 830–1. The Court has recognized that there are "degrees of necessity," 434 U.S. at 506, 98 S.Ct. 824, and that the deference to be given the trial judge's decision to declare a mistrial must vary according to the circumstances which require the mistrial.

■ The judge's decision should be strictly scrutinized "when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." 434 U.S. at 508, 98 S.Ct. at 832, *citing Bowman v. United States,* 372 U.S. 734, 736 (1963). At the other extreme, great deference should be accorded a trial judge's decision to discharge a jury which appears to be deadlocked. 434 U.S. at 510.

---

**2.** In *Crist,* the Court made it clear that this is a constitutional rule. Therefore, a state may not arbitrarily declare that jeopardy attaches at some later point. The Court struck down a Montana statute which provided that jeopardy does not attach until the first witness is sworn.

**3.** In *Arizona v. Washington,* the Court enumerated the reasons why the defendant's "valued right" warrants constitutional protection. A second prosecution

increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.

434 U.S. at 503–04, 98 S.Ct. at 829 (footnotes omitted).

**4.** A defendant who moves for a mistrial is usually held to have waived the double jeopardy bar to reprosecution. *United States v. Jorn,*

400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), *quoted in United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). *See also United States v. Bobo,* 586 F.2d 355, 362 (5th Cir. 1978). *Cf. Sedgwick v. Superior Court for District of Columbia,* 190 U.S.App.D.C. 63, 584 F.2d 1044, 1046 (1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 849, 59 L.Ed.2d 42 (1979).

Even when a defendant moves for a mistrial, however, reprosecution may be barred if the motion was induced by prosecutorial misconduct "intentionally calculated to trigger the declaration of a mistrial." *United States v. Nelson,* 582 F.2d 1246, 1249 (10th Cir. 1978). *See also United States v. Rumpf,* 576 F.2d 818, 822 (10th Cir. 1978).

**5.** The expression "manifest necessity" originated with Justice Story in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

A trial judge's decision to declare a mistrial because of possible juror bias is also deserving of great deference.

> [The judge] has seen and heard the jurors during their *voir dire* examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

434 U.S. at 513–14, 98 S.Ct. at 834, *quoting Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Nevertheless, because the mistrial decision affects a constitutionally protected right, "reviewing courts have an obligation to satisfy themselves that, . . ., the trial judge exercised 'sound discretion' in declaring a mistrial." 434 U.S. at 514, 98 S.Ct. at 835, *quoting United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

In *State of Arizona v. Washington,* 546 F.2d 829 (9th Cir. 1976), *rev'd sub nom. Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), this court decided that a state court judge had improperly declared a mistrial after defense counsel, at voir dire and in his opening remarks to the jury, referred to the prosecutor's withholding of evidence in a previous trial.[6] Because the judge did not specify his reasons for granting the government's motion for mistrial, this court concluded that the motion should not have been granted and reprosecution of the defendant was barred by the double jeopardy clause.

The Supreme Court reversed this decision in *Arizona v. Washington,* holding that the trial judge's ruling was not necessarily erroneous merely because he failed explicitly to set forth the "manifest necessity" which justified the mistrial.[7] The Court then examined the record in detail, to determine whether it reflected the requisite degree of necessity.

The Court pointed out that the trial judge had taken great pains to weigh carefully the respective interests of the parties. After defense counsel's first mention of the earlier trial at voir dire, the judge polled the jury to determine whether they were aware of the reason for the new trial. At that point, they were not. At opening argument, however, defense counsel told the jury that the new trial was necessary "because the prosecutor deliberately withheld exculpatory evidence from the defense." 434 U.S. at 515 n.34, 98 S.Ct. at 835 n.34. The prosecutor then moved for a mistrial.

The trial judge heard argument on the motion. When defense counsel insisted that there was legal support for admitting evidence of the earlier trial, the judge postponed ruling on the motion to allow counsel to provide the necessary support. The following day, the judge "heard extensive argument from both sides regarding both the propriety of defense counsel's opening statement and the need for a mistrial." *Id.* He expressly considered the alternative of issuing a cautionary instruction and concluded that it would be "inadequate to remove the risk of taint." *Id.* Only then did he grant the prosecutor's motion for mistrial.

Based on its review of the record, the Court concluded that "the trial judge acted

---

**6.** Washington was tried once for murder and was convicted. His conviction was reversed and a new trial ordered by the Arizona Supreme Court because the prosecutor had suppressed *Brady* materials. (*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). The second trial ended in the mistrial which formed the basis for Washington's habeas corpus appeal.

**7.** The Court believed that the absence of express findings by the trial court was critical to this court's decision. 434 U.S. at 502 n.9, 98 S.Ct. 824. However, in light of *Arizona v. Washington,* it also reversed a Second Circuit opinion which held that a mistrial was inappropriate where the defendant had not consented and the trial court had failed to consider alternatives to the mistrial ruling. *United States v. Grasso,* 552 F.2d 46 (2d Cir. 1977), *vacated and remanded,* 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978).

responsibly and deliberately," exercising " 'sound discretion' in handling the sensitive problem of possible juror bias." 434 U.S. at 516, 98 S.Ct. at 835. The mistrial ruling was based upon the requisite "manifest necessity."

In this case, although the judge gave his reasons for the mistrial, the record does not reveal a similar concern on his part for the double jeopardy consequences of an erroneous ruling. The prosecutor had not requested a mistrial when the judge, *sua sponte*, informed the jury of Standing Alone's perjury. He discharged the jury over the defendant's objection.

Although he carefully considered the motion for continuance, listening to argument out of the presence of the jury and personally reviewing the handwriting exemplars, he allowed no opportunity for argument from either side on the need for a mistrial. He listened to Sanders' objections only *after* the jury had been excused, but at that point, argument was patently too late.

■ The judge's reason for declaring the mistrial was to avoid "prejudice as far as the defendant is concerned" from the "tainted" testimony of Standing Alone.[8] Yet, given that Sanders intended to attack the credibility of Standing Alone and other witnesses, it is more likely that he would have benefited rather than suffered from the "tainted" testimony. In any event, nothing in the record indicates that the judge considered alternatives to a mistrial which could have dispelled any perceived bias on the part of the jurors, such as allowing cross-examination of Standing Alone[9] or issuing a curative instruction.

Unlike the record in *Arizona v. Washington*, the record here does not reveal the manifest necessity for a mistrial. Nor does it disclose the responsible and deliberate consideration on the part of the trial judge which constitutes the exercise of "sound discretion." We hold that Sanders' second prosecution violated the double jeopardy clause because the first one improperly ended in a mistrial. His conviction must be reversed.

Our decision is in accord with those from other circuits decided after the Supreme Court ruled in *Arizona v. Washington*. In *United States v. Horn*, 583 F.2d 1124 (10th Cir. 1978), the Tenth Circuit reversed a district judge's *sua sponte* declaration of a mistrial. The jury in *Horn* had had difficulty in its deliberations, and at one point sent a note that it was deadlocked. The judge gave an *Allen* charge, then allowed the jurors an overnight recess. · On the following morning, after the jury had deliberated for an hour, the judge declared a mistrial.

The Tenth Circuit concluded that, even if the judge believed, in good faith, that the jury was deadlocked, there was no evidence of deadlock at the time he declared the mistrial. The judge neglected to inquire whether there had been progress in the deliberations and the earlier note from the jury did not necessarily indicate its position after hearing the *Allen* charge and resuming deliberations.

In *Hogan v. Dunkerley*, 579 F.2d 141 (2d Cir. 1978), *cert. denied*, —— U.S. ——, 99

---

8. In discharging the jury, the judge explained:
   [I]n the eight years that I have been serving as a District Court Judge, this is the first time a Perry Mason element has entered into a case. . . . [I]n all fairness to the defendant, because of the very strong testimony that the witness gave saying that she saw him sign the check with a thin blue pen, those things are hard to put out of your mind once you have heard them, and I think in all fairness to everybody, I would just not feel right as a Judge letting this case go any farther at this time.

9. Because Standing Alone was not a defendant, she could have been called as a witness, even if

she intended to assert her Fifth Amendment privilege against self-incrimination. *United States v. Gay*, 567 F.2d 916, 918 (9th Cir.), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978); *United States v. Bautista*, 509 F.2d 675 (9th Cir.), *cert. denied sub nom. Monsivais v. United States*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

The judge, in such cases, must inquire whether there are questions which can be answered without forcing the witness to invoke the privilege. If there are none, then the witness is unavailable and his or her prior recorded testimony can be read to the jury pursuant to Fed. R.Evid. 804(a)(1).

S.Ct. 872, 59 L.Ed.2d 56 (1979), a state court judge declared a mistrial on his own motion after learning that the defendant would have to be hospitalized for a collapsed lung for seven to ten days. Defense counsel strenuously objected to the mistrial, expressly raised the double jeopardy consequences of the ruling, and requested a continuance as an alternative. The Second Circuit held that, because the trial judge did not explain why a continuance was not feasible, there was no manifest necessity for the mistrial and reprosecution of the defendant unconstitutionally placed him twice in jeopardy.[10]

The Fifth Circuit reversed a district judge who declared a mistrial upon learning that the defendant exchanged remarks with a juror. *United States v. Starling*, 571 F.2d 934 (5th Cir. 1978). Although the judge determined that all jurors were aware of the communication, he apparently misunderstood the foreman's attempt to explain that the jurors were unaffected by what had transpired. The order granting the mistrial indicated the judge's belief that the communication prejudiced the jurors against the defendant. His conclusion was not supported by his on-the-record conversation with the foreman. Therefore there was no manifest necessity for the mistrial.

In *United States v. Rich*, 589 F.2d 1025 (10th Cir. 1978), the district judge *sua sponte* discharged the jury in a criminal case over a defense objection. The judge gave no reason for the discharge and none was apparent on the record. The Tenth Circuit concluded that the judge had abused his discretion, and reprosecution of the defendant was barred by the double jeopardy clause.

*United States v. Klein*, 582 F.2d 186 (2d Cir. 1978), *cert. denied sub nom. Klein v. United States*, —— U.S. ——, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), stands in contrast to the above cases. The trial judge there evidenced scrupulous care to avoid a premature declaration of mistrial due to jury deadlock. He carefully responded to all jury requests for information. He consulted with counsel for both sides before communicating with the jury. He requested counsel's suggestions regarding the wording of an *Allen* charge. He expressly considered the alternatives to mistrial. Thus, even though he did not set forth the basis for his mistrial ruling, the record amply demonstrated that he exercised sound discretion and that there was a "manifest necessity" for the mistrial.

These cases teach that, even when the judge explains his or her reasons for declaring a mistrial, the record must support the explicit or implicit finding of "manifest necessity." This is especially true when the judge makes a *sua sponte* ruling over the defendant's objection. When the record is barren of reasons for the mistrial (*Rich*), or discloses that the judge's assumptions regarding jury deadlock (*Horn*) or juror bias (*Starling*) were unfounded, or reveals that the judge failed adequately to consider feasible alternatives to a mistrial (*Dunkerley*),[11] then the decision to declare a mistrial may be reversed by a reviewing court, despite the high degree of deference to be accorded the conclusions of the trial judge in such cases.

The conviction is reversed.

---

**10.** The Tenth Circuit reached a similar conclusion in *Mizell v. New York*, 586 F.2d 942 (2d Cir. 1978). In *Mizell*, the state court judge denied a two day continuance to allow prosecution witnesses to testify because to do so would inconvenience the jury. The Tenth Circuit concluded that jury inconvenience would be minimal and that it alone did not provide the "manifest necessity" for a mistrial.

The judge, in *Mizell*, may have believed that there would be no double jeopardy consequences from the mistrial because no witness had been sworn. At that time, New York had a law similar to the one found unconstitutional in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). *See* note 2, *supra*.

**11.** *But see United States v. Grasso*, 552 F.2d 46 (2d Cir. 1977), *vacated and remanded*, 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978).