742 P.2d 423

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Randy Dale NAB, Defendant-Appellant.**

No. 16148.

Court of Appeals of Idaho.

June 2, 1987.

Randy Nab, pro se.

Randy J. Stokes, Twin Falls for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Randy Nab was convicted of delivery of a controlled substance by the second jury impanelled to hear the case. The first trial ended when the judge declared a mistrial after a juror failed to appear on the second day of trial. Nab has appealed, presenting four issues: (1) whether he was exposed to double jeopardy in violation of article 1, § 13, of the Idaho Constitution and the fifth amendment to the United States Constitution; (2) whether, at his second trial, he was denied a fair trial when he was not allowed to use prior felonies and witness bias for impeachment; (3) whether the admission of marital communications constituted reversible error; and (4) whether a jury instruction unconstitutionally shifted the burden of proof of an element of the crime. For the reasons that follow we uphold both the denial of Nab's motion to dismiss on double jeopardy grounds and his subsequent conviction.

I

We first address the double jeopardy claim. On day one of the first trial a jury was selected and sworn. No alternate juror was selected. The state's first witness testified briefly and the trial was recessed until the next day. On the following morning a juror did not show up. In the presence of the remaining jurors, defense counsel immediately moved to dismiss "on the grounds that jeopardy has attached" and the trial could not proceed.[1] The prosecutor indicated that the state was ready to go forward and opined that, "at the most we are looking at a mistrial." The judge responded that he was "not going to rule on the question of former jeopardy. I will treat the motion as a motion to declare a mistrial which I will do." He immediately informed the jury that, "[a]pparently I have a situation with a juror whose car won't start this morning or for some reason can't be here and has flatly told me she is not going to be here...."

The state contends that the trial judge interpreted Nab's motion to dismiss as one for a mistrial and granted it; or, alternatively, that the mistrial was declared *sua sponte* with manifest necessity. First, we do not consider Nab's motion to dismiss as a motion for a mistrial, nor do we treat his silence in the face of the mistrial declaration, in the presence of the jury, as an indication that he considered his motion as having been changed to one for a mistrial. Thus, although it is not dispositive, we will briefly explain why we cannot agree with the state's argument that the district court should be sustained in declaring a mistrial *sua sponte* "with manifest necessity."

■ The double jeopardy clauses serve not only to preserve the integrity of final judgments and to protect against multiple punishments for the same offense, but they also protect an accused from the burdens of facing a second trial when the first does not proceed to judgment. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Thus, jeopardy attaches when the jury is impanelled and sworn. *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). This rule embraces the right of the defendant to have his confrontation with

---

1. Nab's counsel on appeal did not represent him  in either trial.

society concluded by the first sworn jury and is such an integral part of the constitutional underpinnings of double jeopardy that the rule is binding on the states as an element of due process through the fourteenth amendment. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

The defendant's "valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Arizona v. Washington*, 434 U.S. 497, 503 n. 11, 98 S.Ct. 824, 829 n. 11, 54 L.Ed.2d 717 (1978) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). To override a defendant's interest in finally concluding his "confrontation with society" it must be shown that a *sua sponte* mistrial, declared without defendant's consent, resulted from a manifest necessity, or that the ends of public justice would be defeated by continuation of the trial. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824). The decision to declare a *sua sponte* mistrial rests with the sound discretion of the trial judge. *Arizona v. Washington, supra; State v. Talmage*, 104 Idaho 249, 658 P.2d 920 (1983).

The state argues that there was a "manifest necessity" shown for a *sua sponte* declaration of mistrial. Alternatively, the state argues that, in any event, Nab consented to the mistrial. On the present record we cannot accept either of these arguments. Briefly stated, the record simply does not show that the trial judge considered available alternatives to a mistrial or gave counsel a timely opportunity to be heard on the subject. *Brady v. Samaha*, 667 F.2d 224 (1st Cir.1981); *United States v. Smith*, 621 F.2d 350 (9th Cir.1980); *United States v. Sanders*, 591 F.2d 1293 (9th Cir.1979). The cases establish that it is the court's duty to obtain sufficient information to enable it to consider alternatives to a mistrial. *United States v. Jorn, supra; Douglas v. United States*, 488 A.2d 121 (D.C.App.1985); *People v. Ferguson*, 67 N.Y.2d 383, 502 N.Y.S.2d 972, 494 N.E.2d 77 (1986). The constitution does not require the trial judge to state explicitly on the record the reasons leading to a finding of manifest necessity, but the record must support explicit or implicit findings of manifest necessity. *Arizona v. Washington, supra; United States v. Sanders, supra.*

The state has also contended that Nab, by failing to object to the characterization of his dismissal motion, consented to the *sua sponte* mistrial. We note that the jury was present when the mistrial was declared. No opportunity was given for an objection before the decision was made. Mere silence by Nab and his counsel following the ruling is not enough to infer consent. *State v. Werneth*, 101 Idaho 241, 611 P.2d 1026 (1980); *Henderson v. Wright*, 533 F.Supp. 1373 (D.Maine, 1982).

Our foregoing discussion is deliberately sketchy because findings of manifest necessity for a mistrial or of consent are not dispositive. Regardless of whether such findings could be made in this case, we nonetheless hold that Nab's second trial was not barred by the double jeopardy clauses. We base this ruling on the fact that—at the first trial—Nab immediately moved for a dismissal when the juror did not appear. If the relief he requested had been granted, then a reprosecution would not have offended the double jeopardy clauses. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). In *Scott* the Court was concerned with the appealability by the government of dismissals granted after jeopardy attached. There the court stated:

We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause.... Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression,

does not relieve a defendant from the consequences of his voluntary choice. *United States v. Scott*, 437 U.S. at 98–99, 98 S.Ct. at 2198.

In *Sedgwick v. Superior Court for District of Columbia*, 584 F.2d 1044 (D.C.Cir. 1978), the defendant moved for dismissal when it was learned during trial that there was a *Brady* problem. The Court *sua sponte* granted a mistrial. The appellate court did not view the case as one involving the manifest necessity standard.

> We are instructed not to apply the Double Jeopardy Clause mechanically, but to look beyond the labels of trial motions and rulings to discern the actual intentions of the parties and trial court. [*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977).] Such an approach in this case impels the conclusion that the defendant was not interested in obtaining a verdict from the first jury. Therefore we do not believe that permitting a retrial in this case does violence to the values underlying the Double Jeopardy Clause. [Footnotes omitted.]

*Id.* at 1046–47. Likewise, we find that Nab relinquished his interest in obtaining a verdict from the first jury when he moved for a dismissal not based on the merits of the case.

*Sedgwick* did not address the issue of the waiver of a constitutional right. There is the implication that such a waiver occurs when a defendant moves for a dismissal or for a mistrial. Idaho recognizes the presumption against waiver of fundamental constitutional rights. *State v. Werneth, supra.* This proposition as set forth in *Werneth* derives from *Abercrombie v. State*, 91 Idaho 586, 428 P.2d 505 (1967). *Abercrombie* in turn was based on *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Both *Abercrombie* and *Johnson* involved the necessity of an intelligent and competent waiver of counsel. Here, it cannot be seriously contended that when Nab's *counsel* moved for dismissal *Nab* made a voluntary, knowing and intelligent waiver of his constitutional right

not to be twice placed in jeopardy. However, subsequent federal cases have declined to place the double jeopardy guarantee in the category of fundamental rights that require a knowing, intelligent and voluntary waiver. *United States v. Dinitz, supra; United States v. Smith, supra; United States v. Bobo*, 586 F.2d 355 (5th Cir.1978), *cert. denied sub nom Rowan v. United States*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979). *See also People v. Ferguson*, 67 N.Y.2d 383, 502 N.Y.S.2d 972, 494 N.E.2d 77 (1986). Moreover, the Supreme Court in *Dinitz* stated by footnote:

> The respondent characterizes a defendant's mistrial motion as a waiver of "his right not to be placed twice in jeopardy" and argues that to be valid the waiver must meet the knowing, intelligent, and voluntary standard set forth in *Johnson v. Zerbst*, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357. This approach erroneously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel. It fails to recognize that the protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the concomitant relinquishment of the opportunity to obtain a verdict from the first jury. This Court has implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right. [Citations omitted.]

*United States v. Dinitz*, 424 U.S. at 609 n. 11, 96 S.Ct. at 1080 n. 11. In *People v. Ferguson, supra*, the defendant was not present when a mistrial was granted *sua sponte* with the implied consent of defendant's counsel. The New York Court of Appeals held that the decision to request or consent to a mistrial involves tactical choices appropriately made by the defendant's counsel. We agree, and by analogy we hold that a defendant's counsel may make the tactical choice to move for a

dismissal, as was done in the present case. Accordingly, we hold that Nab's second trial did not violate the guarantee against double jeopardy because Nab waived his right to have the then existing tribunal decide his guilt or innocence by moving for a dismissal on grounds unrelated to factual guilt or innocence.

## II

### A

Nab next asserts that during the second trial he was twice denied his sixth amendment right of confrontation. The first instance occurred when Nab was not allowed to impeach the state's key witness with her prior felony convictions. This witness was the woman used by law enforcement officers to make the drug buy from Nab. She was an admitted drug user. Her cooperation was secured by releasing her husband from jail. He had been arrested for check forgery and was being held under a $10,000 bail. On recross-examination counsel for Nab asked the witness if she had ever been convicted of a felony. The judge sustained an objection and stated:

> It's an improper question. In order to ask that question you must take that up with the Court in chambers and have my permission before you ever ask it, an in camera proceeding. The objection is well-taken, I will strike that from the record, and I will instruct the jury to completely disregard it.

Counsel did not pursue the question further. He did not ask for an in camera proceeding or attempt to make an offer of proof. Rather, he went on with the examination of other matters.

The trial in this case occurred in March 1985, prior to the effective date of the Idaho Rules of Evidence. At that time the use of felony convictions for impeachment was controlled by I.R.C.P. 43(b)(6).

> A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that upon a finding by the court in a hearing outside of the presence of the jury that a prior conviction of a felony of a witness is relevant to his credibility, it then may be shown by the examination of the witness, or the record of judgment, that he has been convicted of a felony and the nature of the felony.

The rule applies to all witnesses whether the witness is the defendant or is a prosecution witness. Felony convictions are often used to impeach the defendant. A hearing outside the presence of the jury protects the defendant's interest in avoiding the bad-man inference carried by prior convictions, at least until the convictions are shown to be relevant to credibility.

When the witness is a *prosecution* witness, conditioning the admission of felonies for impeachment potentially raises confrontation clause issues. In the instant case, Nab was not allowed to confront the key witness against him with her felony convictions. Nab contends on appeal that the witness was on probation stemming from a felony conviction and was awaiting sentencing for another felony. He argues that the trial judge abused his discretion by limiting cross-examination. It is apparent, however, that the judge simply applied I.R.C.P. 43(b)(6) to the question and did not get to an exercise of discretion. Nab never offered to present facts appropriate for a discretionary decision. It was the procedural rule, not the judge, that limited Nab's cross-examination. The question is whether I.R.C.P. 43(b)(6) can, consistent with the confrontation clause, operate to cutoff a criminal defendant's impeachment of a prosecution witness.[2]

"The main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination.*" *Davis v. Alaska,* 415 U.S. 308, 315–16, 94

---

**2.** *See State v. Christopherson,* 108 Idaho 502, 700 P.2d 124 (Ct.App.1985) for the observation that I.R.E. 609 substantially changes I.R.C.P. 43(b)(6). Effective as of July 1, 1985, Rule 609 keeps the in camera hearing requirement and adds a requirement of balancing the relevance against the prejudice of the prior felonies.

S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (*quoting* 5 J. WIGMORE, EVIDENCE § 1395 at 123, 3d edition (1940)) (emphasis original). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 295, 88 L.Ed.2d 15, 19 (1985) (emphasis original). Rule 43(b)(6) did not foreclose Nab's *opportunity* to cross-examine the prosecution's witness about her felony convictions. Rather, it was Nab's failure to follow the rule that foreclosed this inquiry. The *opportunity* was never denied. This conclusion is strengthened by the failure of Nab's counsel to request an in camera hearing after the judge informed him that one was necessary. Thus, counsel was alerted to the need for such a hearing, assuming he was not aware of it previously, and still chose to forego the opportunity to request it. As a result, the judge's discretion to admit or exclude the evidence was never invoked. There is no record here of any ruling to which error can be ascribed.

The Ninth Circuit in a case involving review of a state proceeding stated that, "the confrontation clause applies to the essentials of cross-examination, not to all the details of its implementation." *Chipman v. Mercer*, 628 F.2d 528, 531 (9th Cir.1980). *See also, Cheek v. Bates*, 615 F.2d 559 (1st Cir.1980). We hold that neither the judge nor I.R.C.P. 43(b)(6) impermissibly denied Nab the opportunity to impeach the state's key witness with felony convictions.

**B**

■ Nab's second confrontation clause attack concerns the cross-examination of Nab's ex-wife. During the examination Nab's counsel asked her why she tried to kill Nab. An objection that the question was beyond the scope of direct examination was sustained. Again, Nab's counsel made no offer of proof. Nothing was offered to show a good faith basis to believe an attempt on Nab's life was made, when it was made, or any other circumstances surrounding the proffered evidence. No ex-

planation of the purpose of the evidence, whether offered to show bias, or to impeach credibility was offered. Nab has failed to preserve this issue for review. *State v. Bassett*, 86 Idaho 277, 385 P.2d 246 (1963). Reversal is not required where the objective of questions propounded on cross-examination are not revealed to the trial court. *United States v. Garcia*, 531 F.2d 1303 (5th Cir.1976). Further, without some preliminary offer to show that the inquiry was more than a fishing expedition Nab cannot avail himself of the rule that "where the question shows its own purpose and makes apparent the answer, no offer of proof is necessary...." *State v. White*, 97 Idaho 708, 712 n. 5, 551 P.2d 1344, 1338 n. 5 (1976); *State v. Linn*, 93 Idaho 430, 462 P.2d 729 (1969) (offer of proof unnecessary when court is aware of the substance of excluded evidence). Further, even if we were to hold that impeachment for bias is never beyond the scope of direct examination and therefore that error was committed, *see Sweet v. State*, 498 N.E.2d 924 (Ind.1986), the lack of any of the underlying facts concerning the evidence precludes us from determining the extent of harm caused by the error. *See Delaware v. Fensterer, supra,* (confrontation clause errors reviewed under the harmless error standard).

**III**

■ Next Nab asserts that the court impermissibly allowed Nab's ex-wife to testify to marital communications. I.C. § 9–203(1). She testified, among other things, to seeing quantities of white powder, stating that she knew it was cocaine because Nab told her that it was. No objection based on the marital communications privilege was interposed at any point during her testimony. The failure to assert the privilege has been held to be the equivalent of consent for purposes of I.C. § 9–203(1), and thus the objection is waived. *State v. Chaffin*, 92 Idaho 629, 448 P.2d 243 (1968).

**IV**

■ Lastly Nab challenges the following jury instruction:

You are instructed the State does not have the burden of proving that the defendant did not have any authority under Idaho law to deliver the controlled substance involved in this case. It is presumed that the defendant did not have any such authority; and the burden of proof is on the defendant to rebut the presumption.

This instruction is based on I.C. § 37–2745 which reads in part:

> (a) It is not necessary for the state to negate any exemption or exception in this act in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this act. The burden of proof of any exemption or exception is upon the person claiming it.
>
> (b) In the absence of proof that a person is the duly authorized holder of an appropriate registration, valid prescription, or order form issued under this act, he is presumed not to be the holder of the registration, valid prescription or form. The burden of proof is upon him to rebut the presumption.

Nab asserts that I.C. § 37–2745 unconstitutionally shifts the burden of proof of an element of the crime to the defendant. We disagree. The lack of authority is not an element of the crime. In Idaho the general rule is:

> In the absence of a statute, ... the burden is upon the state in a criminal case to negative any exception or proviso appearing in that part of the statute which defines the crime if the exception is "so incorporated with the language describing and defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted * * *." 41 Am. Jur.2d, Indictments and Informations, § 98, pp. 940–941.

*State v. Segovia*, 93 Idaho 208, 210, 457 P.2d 905, 907 (1969).

The defendants in *Segovia* were charged with possession of a narcotic in violation of former I.C. § 37–3202:

> Except as otherwise provided in this act, every person who possesses any narcotic except upon the written prescription of a physician, dentist, podiatrist, osteopath or veterinarian licensed to practice in this state, may be punished by imprisonment in the state prison for a term of not to exceed ten (10) years.

Our Supreme Court held that the absence of a valid prescription was "an integral part of the offense proscribed and is so incorporated with the description of the offense as to be a material element of it." *Id.* at 210, 457 P.2d at 907. However, when *Segovia* was decided, the statutes did not contain I.C. § 37–2745. A similar statute (former I.C. § 37–2318) had been repealed during a process of recodification.

In 1971 the Legislature repealed former I.C. § 37–3202 and enacted a "Uniform Controlled Substances Act," containing § 37–2745. The statute under which Nab was charged, I.C. § 37–2732(a), contains no valid prescription exception in the definition of the offense. Nor do we believe that the "except as otherwise provided" language is so "incorporated with the language describing and defining the offense" that all other potential exceptions or exemptions become elements of the offense.

In light of the *Segovia* decision, and the subsequent enactment of I.C. § 37–2745, we deem it clear the Legislature intended that *absence* of an "exemption or exception," such as a "valid prescription" or other "authority" to deliver, shall not be an element of the crime of possession or delivery of a controlled substance. Rather, the existence of a valid prescription or other "exemption or exception" must be placed in issue by the accused. *Compare, e.g., State v. Huggins*, 105 Idaho 43, 665 P.2d 1053 (1983) (holding that elements of rape do not include proof of the absence of a marital relationship between the accused and the victim).

This leaves the instruction as given. We agree that the instruction created a mandatory presumption. Further, the instruction placed the burden of proof on the defendant without informing the jury of the quantum of evidence required to meet that burden. An instruction in these words should not be used in a criminal

case. However, in light of the parties' posture at trial the error was harmless in this instance. Nab's defense was that he did not deliver a controlled substance. His authority to do so was not at issue. Nor, unlike the situation in *Huggins, supra,* was there any evidence presented that could have raised the issue. The instruction was unnecessary for the jury's determination of the facts. *See State v. Nelson,* 112 Idaho 245, 731 P.2d 788 (Ct.App.1987).

The conviction is affirmed.

WALTERS, C.J., and BURNETT, J., concur.