### UNITED STATES v. HARTER.

#### No. 7278.

Circuit Court of Appeals, Seventh Circuit.

Nov. 14, 1940.

Rehearing Denied Jan. 3, 1940.

Glenn Griswold, of Peru, Ind., for appellant.

Luther M. Swygert, U. S. Atty., of South Bend, Ind., for appellee.

Before MAJOR and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

Defendant was tried under an indictment of 16 counts, each of which charged a violation of Section 592, Title 12 U.S.C.A.[1] The acts of the defendant, which were alleged to have constituted the offenses with which he was charged, were committed while he was Secretary of the Wabash Valley Trust Company of Peru, Indiana, a state bank insured in the Federal Deposit Insurance Corporation. The jury found him guilty on counts One, Two, Three and Ten, which charged the making of false entries on the books and records of the bank, on counts Five, Six, Seven and Sixteen, which charged wilful misapplications of bank funds, and on count Eight, which charged that he embezzled $3,041.75 of the bank's moneys. The court sentenced the defendant to three years' imprisonment and from the judgment of conviction and sentence this appeal is taken.

At the outset it is necessary to consider the general contention of defendant that he cannot be guilty of a violation of the act unless the false entries, misapplications and embezzlement charged in the indictment affect moneys, funds or credits of a depositor which are insured by the Federal Deposit Insurance Corporation. The defendant states the foregoing contention as follows: "The Federal Government and therefore the District Court of the United States has jurisdiction only over the acts of an officer of a state bank by reason of the fact that the same is a member of, and insured by, the Federal Deposit Insurance Corporation, and then only to the extent that the money, funds and credits of the bank insured by the Federal Deposit Insurance Corporation are affected in any manner."

The language of the act expresses no such limitation as that urged by defendant.

---

[1] The pertinent criminal provisions may be stated as follows:

(1) Any officer, director, agent, or employee of any insured bank "who makes any false entry in any book, report, or statement of such * * * insured bank, with intent in any case to injure or defraud such * * * insured bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such * * * insured bank, or * * * any agent or examiner appointed to examine the affairs of such * * * bank, * * * shall be deemed guilty * * *."

(2) "Any officer, director, agent, or employee * * * of any insured bank * * * who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of such * * * insured bank * * * shall be guilty * * *."

The act applies to any officer, director, agent or employee of any insured bank who makes "any false entry in any book, report, or statement" of an insured bank with the intent to injure or defraud such insured bank or to deceive any of the designated persons. The provisions also specifically embrace any official, director, agent or employee of any insured bank who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of such insured bank. There is no exception in the case of one who commits any one of the forbidden acts even though such act does not affect money, funds or credits which are insured by the Federal Deposit Insurance Corporation. The obvious congressional intent is to safeguard the integrity of insured banks, and thus indirectly protect the interests of the Federal Deposit Insurance Corporation, by discouraging dishonest acts of those who carry on the business of the bank. This is a reasonable regulation since acts of dishonesty and fraud committed by officers and employees of the bank must adversely affect the integrity of the bank and indirectly affect the risk of the Federal Deposit Insurance Corporation. The imposition of criminal responsibility on individuals who conduct the affairs of an insured bank does not affect state statutory limitations upon the powers of the insured bank and does not enlarge the liability of the bank to those who have business relations with it.

### Counts 1, 2, 5, 6, 7, and 16.

■ The transactions of the defendant which supply a basis for the allegedly false entries charged in counts One and Two are related to the charges of misapplication of "moneys, funds and credits" of the Trust Company in counts Five, Six, Seven, and Sixteen. The defendant caused to be made a sale of stock which belonged to a customer of the Trust Company, such sale being made without the knowledge of the customer. The sale was made to the A. G. Becker Co., investment bankers of Chicago; and the Becker Company deposited the proceeds of the sale to the credit of the Wabash Valley Trust Company in the latter's account with its correspondent bank, the First National Bank of Chicago. The credit with the First National Bank was reflected in the Trust Company records by two charge items, one in the amount of $8,200 with the notation "Bonds sold, account H-A Circus"; and the other in the

amount of $166 with the notation "Addl/ sale securities H-A Circus." The basis of the charge items were two charge tickets in the handwriting of the defendant which the defendant handled at the bank window of teller Charles V. Reed; and at the same time deposit tickets, made out in the defendant's handwriting, were presented to Reed. By these deposit tickets, credits corresponding to the charges were shown deposited in the H-A Circus Operating Corporation account; and the ledger sheet of the Wabash Valley Trust Company covering the checking account of the H-A Circus Operating Corporation reflected the two purported deposits.

It is clear from the foregoing that the entries relating to the deposits of $8,200 and $166 in the checking account of the H-A Circus Operating Corporation were false. When the amounts were credited to the checking account of the H-A Circus Operating Corporation its account was overdrawn $1,740.09 and the corporation "deposited" nothing. The entries represented that the H-A Circus Corporation had acquired a deposit credit of $8,366 with the Wabash Valley Trust Company and that the Wabash Valley Trust Company was indebted to the Corporation in that sum. Also, the entries represented that the basis of the deposits was the sale of bonds "sold account H-A Circus." The foregoing entries were false since there was no basis either in fact or in law for the creation of the deposit credit in favor of the Circus Corporation, although the entries enabled the defendant to control for the benefit of the H-A Circus Corporation $8,366 of the "moneys, funds and credits" of the insured bank.

■ It is not material, from the standpoint of the defendant, whether, as between the owner of the stock and the Trust Company, the proceeds of her stock belonged to her or to the Trust Company. These proceeds had been deposited to the credit of the Trust Company in its correspondent bank, and as between the Trust Company and the defendant this credit represented funds of the Trust Company. On facts involving the same relationship as the facts of this case the decisions uniformly hold that one in defendant's position must treat funds or credits, such as the $8,366 credit in this case, as funds or credits of the employer-bank. In Bishop v. United States [2] an officer of a bank paid accom-

---

[2] 8 Cir., 16 F.2d 406, 408.

modation notes of his brother with proceeds of notes and bonds which were held by the bank for collection. In that case it was urged that the money collected did not become part of the bank funds; but the Circuit Court of Appeals held that as between the defendants and the bank the proceeds of the notes and bonds became bank funds. The court further said that if the defendants directed the application of the money collected to the payment of the accommodation notes "they were directing, as far as they were concerned, the application of money which constituted bank funds to the payment of notes which had been taken for their benefit." To the same effect is the reasoning and conclusion in Spencer v. United States [3] and United States v. Jenks. [4]

█ We approve the reasoning and holding in the foregoing cases and as a result necessarily conclude that when the defendant placed and caused to be placed in the checking account of the H-A Circus Operating Corporation the two credits of $8,200 and $166 there was a misapplication of "the moneys, funds and credits" of the Trust Company to the use of the H-A Circus Operating Corporation, as charged in count Sixteen.

Counts Five, Six, and Seven allege, and the evidence supports the allegations, that the defendant honored or caused to be honored two sight drafts and a check drawn on the H-A Circus Operating Corporation account when the defendant knew that as between the Circus Corporation and the Trust Company there was no money in the Corporation's account. The result was that the drafts and check were paid out of the "moneys, funds and credits" of the Trust Company. The foregoing acts by the defendant constituted misapplications of the funds, moneys and credits of the Trust Company.

## Count 8.

█ Count Eight charges that the defendant received and took into his possession certain moneys, funds and credits in behalf of the insured bank in the amount of $3,041.75 and that the defendant embezzled the moneys, funds and credits and converted the same to his own use.

The facts relating to the charge of count Eight reveal another sale of securities which the Trust Company was handling for a customer. The customer's bonds were sold by A. G. Becker Company for the Wabash Valley Trust Company for $3,891.-75 and an acknowledgement of the sale was made by the bank and was signed by the defendant as Secretary of the Wabash Valley Trust Company. The proceeds of the sale were deposited in the First National Bank of Chicago by the A. G. Becker Co. to the credit of the Wabash Valley Trust Company. The transaction was handled by the defendant and the Wabash Valley Trust Company ledger sheet covering its account with the First National Bank of Chicago reflected a charge to this account of the $3,891.75. The defendant presented to a teller of the Wabash Valley Trust Company a charge ticket to the First National Bank of Chicago for $3,981.75, and obtained from the teller $3,050 in cash. Defendant gave the teller $8.25 in cash, as a balancing item, and the $3,050 which he received in cash, less the $8.25, is the $3,041.-75 which the defendant is charged with having embezzled. In accordance with our discussion of counts Five, Six, Seven and Sixteen, we hold that as between the defendant and the Wabash Valley Trust Company the $3,041.75 involved in count Eight belonged to the Wabash Valley Trust Company. Consequently, the evidence supports the charge that the defendant embezzled that amount of the moneys, funds and credits of the Trust Company.

## Counts 3 and 10.

█ Counts Three and Ten contain allegations, which are supported by substantial evidence, that the defendant made and caused to be made entries which purported to show that the insured bank, as payee, held certain notes, and which entries represented that the insured bank had made a loan to Kokomo Pontiac Sales and to one Albert J. Brooks. The counts allege that these entries were false, and the evidence discloses that they were, since no such loans were made and, in fact, the purported makers of the notes were fictitious.

The defendant makes the specific contention that there is a fatal variance between the allegations of counts Three and Ten, which identify the records in which the false entries were made, and the evidence offered to support the counts. Defendant argues that the corpus delicti of the false entries as charged in the counts is a false entry "in the Direct Liability Ledger which was one of the books regularly kept by said

[3] 8 Cir., 169 F. 562, 566.     [4] D.C., 264 F. 697.

insured bank." And the defendant concludes that the government is limited to proof of a false entry in "the direct liability ledger which was one of the books regularly kept by said insured bank." In short, the defendant contends that it was necessary for the government to introduce a "book" of the bank and identify it as "the direct liability ledger."

It is true that a "direct liability ledger" in the form of a book was not introduced as evidence. But government's exhibit 55 is in evidence and was identified as "a ledger sheet from a liability ledger covering a loan in the name of the Kokomo Pontiac Sales * * * in the amount of $3,800." Exhibit 55 is headed "Direct Liability" and at the bottom of the page carries the notation "Wabash Valley Trust Co., Peru, Indiana." Government's exhibit 55 was further identified as follows: "Government's Exhibit 55, part of the Wabash Valley Trust Company's records is the collateral loan ledger sheet bearing date of November 3, 1938 showing a note to the bank by the Kokomo Pontiac Sales * *." Exhibit 55, described by the testimony of two tellers, is a ledger sheet of the direct liability ledger of the Wabash Valley Trust Company. It was sufficient for the government to introduce only that ledger sheet which was material to the allegations of the indictment provided the ledger sheet was identified as a part of the direct liability ledger. In the absence of objection by the defendant based upon some special reason, the introduction of the complete ledger, or book, was not required as a matter of evidence; but to make out the case under the statute it was necessary to show that the false entry was made in a "book, report, or statement" of the insured bank. The testimony of witnesses was adequate to satisfy the foregoing requirement, unless we are to say that a loose-leaf ledger is not a "book" within the meaning of the statute.

What we have said in respect to exhibit 55 applies also to exhibit 65.

Defendant contends that the bank's failure to prove that the book, in which the entries appeared, is a book "regularly" kept by the bank resulted in a variance between the proof and the indictment which contains an allegation that the false entries were in a book "regularly kept" by the bank. We think the testimony necessarily carries the implication that the liability ledger was "regularly kept" by the bank.

But since it is not material under the statute whether the "book" is one that is "regularly kept" by the bank, the allegation in question was not an allegation of a material fact and can be treated as surplusage.

Defendant urges specifically that the government failed to prove the allegations in counts Three and Ten that the entries were made or caused to be made with the wrongful intent which is required by the statute. The existence of the wrongful intent was a question of fact for the jury; and, as is usually the case, when intent is an issue, the only practical way of establishing it was to introduce evidence of facts from which the jury reasonably could infer the existence of the intent. The intent required by the statute for the offense of making a false entry is the intent to injure or defraud the insured bank or to deceive any officer of the insured bank, or any agent or examiner appointed to examine the affairs of such insured bank. In the case of Savitt v. United States [5] the Court of Appeals stated that "in guiding the jury in what is a purely mental operation, the law has laid down at least one rule which the learned trial judge properly charged to the effect that 'every man is presumed to intend the natural and necessary consequences of his acts.'" In the light of the foregoing rule the evidence was sufficient to justify the inference that the defendant made the false entries with the intent to injure the insured bank and to deceive its officers or any agent or examiner appointed to examine the affairs of the insured bank.

Defendant further contends that these entries were in fact true entries, the substance of his argument being stated as follows: "As the entry of transactions only, they constitute no representation as to the truth or falsity of the notes, and involve no assertion as to the value or bona fides of the notes. The identical entry would have been made if the defendant had not the knowledge of the fact that the notes were fictitious." In testing the truth or falsity of an entry it is necessary to accept the normal meaning of such entry. In the instant case the entries in counts Three and Ten relate to the notes which appear to have been executed by the Kokomo Pontiac Sales and by one Albert J. Brooks. The entries meant to any one who inspected them that Kokomo Pontiac Sales had received a loan from the bank and had ex-

[5] 3 Cir., 59 F.2d 541, 543.

ecuted its note for the amount of the loan, and that Albert J. Brooks had borrowed money from the bank and had executed his note, for the amount of the loan. The officers of the insured bank would so understand the entries and any one making an examination of the affairs of the bank would so understand. Since in fact no loan had been made to either of the purported makers, and since neither of the purported makers actually existed, the entry is false. It is true that there is a distinction between a fraudulent transaction and a false entry. An entry which accurately reflects a fraudulent transaction is not necessarily a false entry. But if the normal meaning of an entry is such that it represents facts to exist which are inconsistent with the existence of the fraudulent transaction which is the subject of the entry, then such entry is a false entry. As stated in United States v. Warn,[6] with reference to the entry in the bank's book of a "dummy" note, "if * * * [the note] was a mere sham, a mere make-believe note, and the defendant knew such to be its character, he could not rightfully carry it as a real asset of the bank, and entries purporting to exhibit it as such would be false." It may be true, as stated by defendant, that "the identical entry would have been made if the defendant had not the knowledge of the fact that the notes were fictitious"; but the entry would be none the less false although the defendant would be without the wrongful intent required by the statute.

The defendant has failed to show the existence of any error in the record and the judgment of the District Court is affirmed.