UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald MOUTON, Defendant-Appellant.

No. 79–1391.

United States Court of Appeals,
Ninth Circuit.

May 6, 1980.

Daniel F. Cook, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Eb F. Luckel, Jr., Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and ANDERSON, Circuit Judges, and GRANT,*, District Judge.

GRANT, Senior District Judge:

This appeal involves a conviction for aiding and abetting in the misapplication of funds controlled by a bank, the deposits of which are insured by the Federal Deposit Insurance Corporation.

On December 12, 1978, a 20-count indictment was returned naming as defendants Shirley Ann Levias and the appellant, Donald Mouton. Levias was charged with 20 counts of willful misapplication of bank funds, in violation of 18 U.S.C. § 656, and Mouton was charged with 20 counts of knowingly and willfully aiding and abetting Levias in the misapplication of bank funds, in violation of 18 U.S.C. § 656 and 18 U.S.C. § 2, the aiding and abetting statute. Section 656 provides, in pertinent part:

> Whoever, being an . . . employee of . . . any . . . insured bank . . . willfully misapplies any of the moneys . . . of such bank or any moneys . . . intrusted to the custody or care of such bank . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both
>
> . . . .
>
> As used in this section, the term . . . 'insured bank' includes any bank . . . the deposits of which are insured by the Federal Deposit Insurance Corporation.

On February 8, 1979, Co-defendant Levias pleaded guilty to Count I of the indictment as part of a plea agreement whereby she agreed to testify against appellant. In return the United States agreed to dismiss the remaining counts and inform the sentencing judge of her cooperation.

* Senior United States District Judge for the Northern District of Indiana, sitting by designation.

Pre-trial motions were heard by Judge William H. Orrick, Jr.; however, shortly before trial, the case was reassigned to Judge Wollenberg. On April 23, 1973, trial commenced; three days later a guilty verdict was returned on all 20 counts. Appellant was sentenced and is currently serving a three-year sentence on Count I with concurrent three-year sentences on the remaining counts.

Crocker National Bank (the victim bank) has an unemployment compensation disability plan that provides benefits to bank employees who have become injured, disabled or hospitalized. The disability plan claims procedures operate by the branch bank sending a form to the personnel department and to the employee disability benefits department of Crocker National Bank. The disability benefits department would then send a claim form to the disabled employee to be filled out and returned. Once the claim form was returned, the employee's benefits would be computed and a benefit check prepared by a clerk of the employer, to be signed by a supervisor and mailed by the clerk. Co-defendant Shirley Levias was a clerk in the employee disability benefits department. Levias fraudulently prepared claim files for real bank employees, submitted the files and benefit checks to the supervisor, took the employee benefit checks and, according to Levias, gave them to the defendant to cash.

The prosecution additionally introduced a tape recording of two conversations between Levias and Mouton that occurred on May 23, 1978, prior to the December 12, 1978 indictment. The apparent purpose of the introduction of the tapes was to substantiate the assertion that Mouton sought to intimidate Levias and to coerce her not to testify as a government witness at trial. FBI Agent Duff testified that the tape was made by use of a recorder connected to the Levias telephone system. The agent further testified that he was responsible for recording the calls; that the entire conversation, except the initial salutation, was recorded; that only several words or phrases from the tape played to the jury were inaudible; and that, as a whole, it was an accurate and complete recording of the conversation. Defendant points out that there were gaps in the tapes and that he filed a pre-trial motion *in limine* as well as objecting at trial.

Defendant presents four questions on appeal:

I—Whether the government must prove, as an element of a violation of 18 U.S.C. § 656, that the moneys misappropriated were actually insured by the Federal Deposit Insurance Corporation;

II—Whether the trial court erred in admitting two recorded conversations;

III—Whether the prosecutor made improper comments during final argument;

IV—Whether the trial court erred in instructing the jury.

## I—NEXUS WITH THE FDIC

■ Defendant filed a pretrial motion *in limine* regarding the scope of 18 U.S.C. § 656, contending that a violation of Section 656 occurs only when the moneys allegedly taken are federally insured funds, not simply because moneys were taken from a federally insured bank. The motion was denied after a hearing and defendant now renews his contention, asserting that the moneys involved in the case at bar were not proven to be federally insured, while admitting that the victim bank was insured by the FDIC. To support his contention, defendant cites two predecessor statutes[1] upon which 18 U.S.C. § 656 was based—12 U.S.C. § 592 (1940)[2] and 12 U.S.C. § 597

---

1. 18 U.S.C. § 656 was enacted in 1948 as part of the recodification of the federal criminal law into Title 18.

2. 12 U.S.C. § 592 (1940) provided, in pertinent part:

(1940)[3]. Defendant argues that the legislative history of Section 656 reflects an intent to simplify and clarify the earlier statutes without changing the existing law. The government's position is that it is irrelevant whether the specific moneys are insured.

It is clear from the cases that have interpreted both 18 U.S.C. § 656 and its predecessor statutes, that defendant's contention is incorrect.

In *Garrett v. United States*, 396 F.2d 489 (5th Cir. 1968), *cert. denied* 393 U.S. 952, 89 S.Ct. 374, 21 L.Ed.2d 364, the Fifth Circuit affirmed a conviction under Section 656, holding that, "The purpose of the statute is to preserve and protect the *assets* of banks having a *federal relationship* such as national banks, *banks with federally insured deposits*, Federal Reserve banks, and Federal Reserve Member banks." 396 F.2d at 491. (Emphasis added.)

In affirming another misapplication conviction, the court in *United States v. Wilson*, 500 F.2d 715 (5th Cir. 1974), *cert. denied* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 stated, "It should be remembered above all else that this statute was enacted to preserve the FDIC from loss *and to preserve and protect the assets of banks having a federal relationship* [citing *Garrett, supra*]." 500 F.2d at 720. (Emphasis added.) A similar statement has been made by the Eighth Circuit in *United States v. Barket*, 530 F.2d 181, 186–187 (8th Cir. 1975), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282.

Even accepting defendant's characterization of the legislative history of Section 656,

the simple answer to defendant's argument is that the court below has not expansively construed Section 656 but, rather, has applied a reasonable construction—a construction that was adopted by the Seventh Circuit back in 1940. In *United States v. Harter*, 116 F.2d 51 (7th Cir. 1940), the court affirmed a conviction under 12 U.S.C. § 592 (1940) (a predecessor to Section 656, see nt. 2, *supra*) and resolved a contention similar to that in the case at bar:

At the outset it is necessary to consider the general contention of defendant that he cannot be guilty of a violation of the act unless the false entries, misapplications and embezzlement charged in the indictment affect moneys, funds or credits of a depositor which are insured by the Federal Deposit Insurance Corporation. The defendant states the foregoing contention as follows: 'The Federal Government and therefore the District Court of the United States has jurisdiction only over the acts of an officer of a state bank by reason of the fact that the same is a member of, and insured by, the Federal Deposit Insurance Corporation, and then only to the extent that the money, funds and credits of the bank insured by the Federal Deposit Insurance Corporation are affected in any manner.'

The language of the act expresses no such limitation as that urged by defendant. The act applies to any officer, director, agent or employee of any insured bank who makes 'any false entry in any book, report, or statement' of an insured bank with the intent to injure or defraud such insured bank or to deceive any of

---

Any . . . employee of any Federal reserve bank, or of any member bank . . ., or of any national banking association, or of any insured bank . . . who embezzles, abstracts, or willfully misapplies any of the moneys . . . of such Federal reserve bank or member bank, or such national banking association or insured bank . . . shall be deemed guilty of a misdemeanor, and upon conviction thereof in any district court of the United States shall be fined not more than $5,000 or shall be imprisoned for not

more than five years, or both, in the discretion of the court.

**3.** 12 U.S.C. § 597 (1940) provided, in pertinent part:

Whoever, being connected in any capacity with a Federal Reserve bank . . . embezzles, abstracts, purloins or willfully misapplies any moneys . . . whether belonging to it or pledged or otherwise entrusted to it . . . shall be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both.

the designated persons. The provisions also specifically embrace any official, director, agent or employee of any insured bank who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of such insured bank. There is no exception in the case of one who commits any one of the forbidden acts even though such act does not affect money, funds or credits which are insured by the Federal Deposit Insurance Corporation. The obvious congressional intent is to safeguard the integrity of insured banks, and thus indirectly protect the interests of the Federal Deposit Insurance Corporation, by discouraging dishonest acts of those who carry on the business of the bank. This is a reasonable regulation since acts of dishonesty and fraud committed by officers and employees of the bank must adversely affect the integrity of the bank and indirectly affect the risk of the Federal Deposit Insurance Corporation.

116 F.2d at 53, 54. The sound analysis of the *Harter* court is equally applicable today and, therefore, we hold that as long as the misapplied moneys are assets of an insured bank, it is irrelevant whether they are specifically insured.

## II—ADMISSION OF RECORDED CONVERSATIONS

Defendant argues that the prosecution did not lay a proper foundation for the introduction of the two contested recordings. It is asserted that seven foundation requirements, established in *United States v. McKeever*, 169 F.Supp. 426 (S.D.N.Y. 1958), *rev'd on other grounds*, 271 F.2d 669 (2d Cir. 1959),[4] were not satisfied.

4. The *McKeever* court listed the required elements of a proper foundation for the admission of sound recording as including showings:

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

In *United States v. King*, 587 F.2d 956 (9th Cir. 1978), this court recently addressed the question of whether this circuit would strictly follow a rigid set of foundation requirements:

Although our Court has apparently never passed directly on the desirability of the *McKeever* formulation of the elements needed to construct a proper foundation for the admission of sound recordings, our cases similarly indicate that authenticity and general trustworthiness are the keystones of a proper foundation. In *Brandow v. United States*, 268 F.2d 559 (9th Cir. 1959), we stated that '[t]he foundation which must be laid for the introduction of recordings of conversations—its nature and extent—differs widely. It is a matter largely within the good discretion, judicially exercised, of the trial judge.' *Id.* at 567. *Accord, Stubbs v. United States*, 428 F.2d 885 (9th Cir. 1970), *cert. denied*, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971); *Todisco v. United States*, 298 F.2d 208 (9th Cir. 1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 602, 7 L.Ed.2d 527 (1962). Accordingly, we think that the *McKeever* elements, upon which King relies, are useful, but not dispositive, guidelines for determining when a proper foundation for the introduction of sound recordings has been made. Ultimately, the trial court, in the exercise of its judicial discretion, must be satisfied that the recording is accurate, authentic, and generally trustworthy. The burden is properly on the offering party—here the Government—'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of . . . record-

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

169 F.Supp. at 430.

ings . . . .' *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir.), *cert. denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). *Accord, United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975).

587 F.2d at 961.

 In the case at bar, an FBI Agent testified that he was responsible for recording the calls; that the entire conversation except the initial salutation was recorded; that only several words or phrases from the tape played to the jury were inaudible, and that as a whole it was an accurate and complete recording of the conversations. The court below, in its sound discretion, accepted the FBI Agent's testimony as meeting the Government's burden of proof and admitted the recordings into evidence. This court will not overturn an evidentiary ruling unless we are convinced that the decision constituted an abuse of discretion. *United States v. Hearst*, 563 F.2d 1331, 1349 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90. From a review of the trial transcript, we find no abuse of discretion and we hold that the contested recordings were properly admitted.

### III—PROSECUTION COMMENTS

 During his rebuttal final argument, the prosecutor stated:

Now Mr. Cook did make mention of the vast resources of the government or that the FBI has this wonderful ability to do many things, and implied in that you should require something in addition to what the law otherwise requires. That, of course, would be in violation of your duty as jurors. You're required to apply the facts as you find them to the law as the court gives it, and if you find the defendant guilty, that's it. Because the government is involved in this, that doesn't mean you have to find more evidence than you otherwise would have to.

Defense counsel thereupon objected:

Your Honor, I object. I think Mr. Luckel is misstating what I said. I expressed

that under the reasonable doubt standard.

The district court did not sustain the objection. Defendant further refers to a portion of the prosecutor's rebuttal wherein he attempted to respond to defense counsel's question concerning an additional 150 checks allegedly manipulated by Levias that were not in evidence or part of the indictment. A third portion of the prosecutor's rebuttal is quoted to this court to argue that the prosecutor was himself testifying to the veracity of the tapes and placing his own credibility before the jury. Defense counsel again objected, but was not sustained.

Defendant asserts that the prosecutor's conduct in putting the Government's and his own credibility in issue, and going beyond the evidentiary record, was improper and requires reversal, citing *United States v. Artus*, 591 F.2d 526 (4th Cir. 1979) for the rule that such conduct is plain error not even requiring an objection.

The Government argues that before a determination of prosecutorial misconduct in rebuttal summation can occur, the court must review the entire transcript and evaluate the statements in context.

It is argued that wide latitude in summation is allowed the prosecutor when the comments are in response to defense counsel. The above quoted remark of the prosecutor was allegedly made in response to a defense argument that could have reasonably been interpreted as implying that more proof should be expected simply because the federal government and its agencies are involved (as opposed to Mouton's suggestion that the prosecutor was referring to the "beyond a reasonable doubt standard").

The second challenged statement of the prosecutor, concerning checks allegedly fraudulently manipulated by Levias but not made a part of the indictment or introduced as evidence, is defended as being in response to defense argument that raised the question of "what happened to those 170

checks?"[5] The thrust of the defense argument is allegedly that Mouton must not have been involved in the other 150 checks since the Government presented no evidence to that effect. The Government argues it was required to respond that because no evidence was presented with respect to the remaining checks, no inference should be drawn either way.

The last error assigned to final summation, concerning the prosecutor's attempt to tell the jury he did not tamper with the tapes, is characterized by the Government as a response to defense counsel's argument that suggested a suspicious reason for gaps in the tapes, thereby impugning the prosecutor's credibility. *Wright v. United States*, 353 F.2d 362 (9th Cir. 1965), is cited to argue that such comments, within the context of defense counsel's opening the door, are fair advocacy.

The Government argues that no prejudice occurred in that every time defense counsel objected, the court intervened and, additionally, the court instructed the jury that arguments of counsel are not evidence and that any conflict between the law argued by counsel and that given by the court, must be governed by the court's position.

After review of the context of the prosecutor's final argument, we are convinced that the comments attacked by defendant were within the scope of proper argument, in light of the fact that defense counsel first opened the door on the contested subjects. Even if we consider the comments as slightly improper, we could not conclude that it was more probable than not that the error materially affected the verdict, which is required for reversal under *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir. 1977).

## IV—JURY INSTRUCTIONS

The trial court refused to give Mouton's requested instruction that an essential element of the offense of aiding and abetting in the misapplication of bank funds is that the misapplication must be for the benefit of the principal (the bank employee) or the aider and abettor. Instead, the court gave an instruction that defined "misapply" as an action taken for the use and benefit of the bank employee "or some person other than the bank". *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972), is cited for the holding that the prosecution must prove that the misapplication was for the benefit of the bank officer or the aider and abettor.

The second instruction attacked by Mouton dealt with coercion and intimidation of a witness by a defendant. (1 Devitt and Blackmar, F.J.P.&I. § 15.11 (3rd Ed. 1977)). Appellant argues there was no evidence that he attempted to persuade a witness to testify falsely. Mouton discounts the testimony of Levias that she was threatened by him early on in the investigation. He attempts to distinguish any earlier threat from the absence of threats once Levias definitely became a witness for the prosecution.

■ Regarding the instruction that the prosecution was required only to prove that the bank employee or any third person benefited from the misapplication, the Government argues it is irrelevant who benefits, provided that the bank is deprived of the right to make use of its funds, citing *United States v. Dreitzler*, 577 F.2d 539, 549 (9th Cir. 1978), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473.

The Government argues, and we agree, that Mouton's reliance on *United States v. Cooper, supra,* is misplaced in that the court in *Cooper* relied on *Hall v. United States*, 286 F.2d 676 (5th Cir. 1951), *cert. denied*, 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236, for the proposition that the misapplication of bank funds must have benefited the bank officer or the aider or abettor. How-

---

**5.** Apparently both trial counsel misspoke the figure of checks not made a part of the indictment as 170, rather than the 150 check figure used in appellee's brief. The exact figure is insignificant.

ever, in *Hall*, the court was merely applying the facts before it to the general rule cited in an earlier Fifth Circuit case, *United States v. Meyer*, 266 F.2d 747 (5th Cir. 1957), wherein the court stated the rule that a violation will occur if the misapplied funds are for the use of any third person.

With respect to the instruction dealing with coercion and intimidation of a witness by a defendant, we find that there is ample evidence in the record that Mouton sought to intimidate Shirley Levias and to coerce her not to testify at trial; for example, the transcript and the May 23, 1978 taped conversations. It can be inferred that Mouton sought to prevent a future criminal prosecution. *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976), stands for the proposition that evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact.

We hold that the trial court properly instructed the jury.

AFFIRMED.