UNITED STATES of America, Appellee,

v.

Gregory W. T. COX, Appellant.

No. CA–80–1048.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 1980.

Decided Dec. 8, 1980.

---

**6.** The Court acknowledged that the Restatement took no position on this issue. *Id.* at 555   n. 10, 87 S.Ct. at 1218 n. 10.

David M. Heller, Asst. Federal Public Defender, Phoenix, Ariz., for appellant.

Kenneth L. Fields, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before SKOPIL and ALARCON, Circuit Judges, and REED,* District Judge.

EDWARD C. REED, Jr., District Judge:

Appellant, Gregory Waldo Thomas Cox, seeks appellate review of his convictions, following a jury trial held December 5–17, 1979, on three counts of an indictment charging him with possession of unregistered firearms in violation of Title 26, United States Code Section 5861(d). A prior jury trial held September 25–30, 1979, ended in mistrial.

At the first trial, appellant moved for a mistrial and a dismissal of the indictment claiming that the prosecutor had improperly questioned the appellant concerning his failure to give statements to federal agents. The Honorable Valdemar A. Cordova granted the motion for mistrial but denied the appellant's motion to dismiss the indictment finding that the prosecutor's actions were unintentional.

In November of 1979, before the second trial, appellant again moved to dismiss the indictment on double jeopardy grounds. After a hearing, the district court denied this motion finding that the prosecutor had not acted intentionally or with gross negligence.

In January of 1980 defendant was sentenced by the court on account of said convictions to five years imprisonment on each count, to run concurrently. Appellant appeals the judgment of conviction on each of the three counts of the indictment.

The charges resulting in the convictions which the appellant now contests came about as a consequence of three bombing incidents in the Phoenix, Arizona, area in the first half of 1979. Each incident involved the use of a "pipe bomb" strapped to the gas tank of an unoccupied motor vehicle. The bombs were exploded by a time delay device. All of the bombs consisted of a length of galvanized pipe with threaded nipples on each end, filled with a double base smokeless gun powder, and sealed at both ends with pipe caps. Each bomb used a Baby Ben alarm clock and two batteries as its detonating device. All the pipes used were scored for fragmentation. All used masking tape in some manner.

Defendant presents four questions on appeal:

I Did the district court err in admitting three mockup bombs into evidence and into the jury room during deliberation?

II Did the prosecutor's closing argument amount to reversible error?

III Did the district court commit reversible error by allowing a witness to state her impression and understanding of a conversation with the appellant?

IV Should appellant's retrial have been barred by the Double Jeopardy Clause of the Fifth Amendment on the basis that the mistrial was provoked by intentional or grossly negligent prosecutorial misconduct and because the Government sought to utilize the mistrial to strengthen its case at the second trial of the case?

I ADMISSION OF THE MOCKUP BOMBS INTO EVIDENCE AND INTO THE JURY ROOM.

Appellant contends that there was insufficient foundation to admit the mockup bombs into evidence even for illustrative purposes and that the Court should not have permitted the mockups to be taken into the jury room during deliberations. None of these prototypes was an exact replica of the actual destructive devices used in the bombings. Appellant asserts that the

---

* Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation.

use of the mockups was unduly prejudicial and had the potential for causing misconceptions by the jurors.

Prior to trial, Thomas Cousins, an explosives and enforcement officer with the Bureau of Alcohol, Tobacco and Firearms, constructed the model bombs using the same type of ingredients as those found at the site of each explosion. Since each of the devices had been exploded, Cousins "filled in the blanks" in constructing the devices, relying on his experience with how bombs of this type are normally constructed. In his testimony at trial Cousins acknowledged that he had no physical evidence to support the exact construction of each bomb and noted where he had improvised in their creation. Appellant objected at trial to admission of the mockups of the bombs because the devices were not based on evidence before the jury and that each bore misleading similarities.

Prior to the prototypes being viewed by the jury, an *in camera* conference was held concerning their admissibility. At the time of their display to the jury and admission into evidence, both the prosecution and defense explored in detail what parts of the devices were based upon physical evidence found at the scenes of the explosions and what had been supplied by the experience of Mr. Cousins. The exhibits were admitted into evidence for illustrative purposes by the court with the following limiting instruction:

"Members of the jury, in that respect the Court advises you to keep in mind that the expert Thomas Cousins has testified that what he has told you is an opinion regarding the physical evidence contained in exhibits 41, 42 and 43. Any relationship of the physical evidence to each other and the similarities were testified about by him. However, the exhibits 41, 42 and 43 are not being admitted nor do they represent exact models of the devices in question, since the witness has testified that there are dissimilarities and that he does not know nor does he render an opinion regarding the wiring or manner in which they were connected to each other. He is only submitting the exhibits as the model of the way in which they

can relate to each other, not the way they did."

Admission of evidence admitted for illustrative purposes into the jury room during deliberations has been discouraged by this circuit and would constitute reversible error in certain circumstances. *United States v. Abbas*, 504 F.2d 123 (9th Cir. 1974) *cert. denied* 421 U.S. 998, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975); *United States v. Krasn*, 614 F.2d 1229 (9th Cir. 1980). In both *Abbas* and *Krasn* this Court held the admission of certain illustrative evidence into the jury room was not reversible error where the defense had an adequate opportunity to challenge the factual basis for the evidence and the court in each instance gave a limiting instruction concerning the role of the evidence. *Abbas, supra; Krasn, supra.*

■ The Judge's limiting instruction, when coupled with the opportunity for cross–examination by defense counsel, would neutralize an abuse of discretion mandating reversal. On review, a district court's ruling to admit evidence and determine relevancy should not be disturbed unless there is a clear abuse of discretion. *Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Operators of the United States and Canada*, 525 F.2d 1354, 1362 (9th Cir. 1975); *see also, United States v. Martin*, 599 F.2d 880, 889, (9th Cir. 1979); *McCormick on Evidence*, 2d Ed. § 212, p. 528; *see also, United States v. Downen*, 496 F.2d 314, 320–321 (10th Cir. 1974) (blackboard summarizing indictment allowed in jury room during deliberations).

■ It would appear to be the better practice in a case of this sort to have excluded the illustrative evidence from the jury room. The role of such evidence is preferably that of a testimonial aid for a witness or as an aid to counsel during argument. Otherwise evidence of this sort may cause error in that it can present an unfair picture of the testimony at trial and can be a potent weapon for harm due to its great persuasiveness. *See, Abbas, supra; Krasn, supra.*

Based upon the record before us, and given the limiting instruction and the op-

portunity for cross–examination, we find no clear abuse of discretion.

## II CLAIMED CUMULATIVE IMPROPRIETY OF PROSECUTOR'S CLOSING ARGUMENT.

■ During his closing argument the prosecutor stated that defense counsel had to convince one of the jurors of a reasonable doubt as to defendant's guilt.

Before his own closing argument, defense counsel objected to the prosecution's characterization of the defense's burden and moved for a mistrial pursuant to *United States v. Harrigan*, 586 F.2d 868 (1st Cir. 1978). The court denied the motion but sustained the objection, admonishing the prosecution. No cautionary instruction was given to the jury at that time. Defense counsel, during his own argument, and the court, in the formal instructions given later to the jury, stated the correct standard of proof for the Government and admonished the jurors that the defense had no burden in a criminal case.

This Court has held that improprieties in counsel's argument to the jury do not require a new trial unless they are so gross as to probably prejudice the defendant and that prejudice has not been neutralized by the trial judge. *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977); *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *United States v. Mikka*, 586 F.2d 152 (9th Cir. 1978).

Contra to appellant's allegations, a reading of the record does not reflect that the prosecutor in his closing argument misstated the evidence in any significant respect. Under these circumstances and absent objection the prosecutor's statement does not constitute plain error and does not mandate reversal. *Parker, supra; United States v. Mouton*, 617 F.2d 1379 (9th Cir. 1980); *United States v. Berry*, 627 F.2d 193 (9th Cir. 1980).

Even if any of the prosecution's comments are considered as slightly improper,
it cannot be concluded that it was more probable than not that any errors in this argument affected the verdict. Such would be required for reversal. *United States v. Valle–Valdez*, 554 F.2d 911, 916 (9th Cir. 1977); *Berry, supra, Mouton, supra.*[1]

## III STATEMENT OF WITNESS CARTER OF HER IMPRESSION AND UNDERSTANDING AS TO HER CONVERSATION WITH APPELLANT.

■ Witness Jeanette Carter testified in response to the Government's question that appellant told her:

"A: He never actually said that, you know, he had blown it up but it was my understanding, or by his mentioning that he had a friend and that when he showed me the article that it was my impression when we were done talking that he was involved in having it blown up."

■ Carter's testimony as to her impression of what the appellant meant by his statements and contemporaneous conduct goes beyond the literal meaning of appellant's words and actions themselves. Lay witnesses are normally not permitted to testify about their subjective interpretations or conclusions as to what has been said. *See, United States v. Marzano*, 537 F.2d 257, *cert. den'd.* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (3rd Cir. 1976), *DeLoach v. United States*, 307 F.2d 653 (D.C. Cir. 1962); *contra United States v. Brooks*, 473 F.2d 817 (9th Cir. 1973). Under Rule 701 of the Federal Rules of Evidence, some lay expressions of opinion or inference may be permitted but only if rationally based on perception of a witness and helpful either to an understanding of the testimony of the witness on the stand or to the determination of a fact in issue.

Carter's conclusions derived from the fact that on two occasions the appellant had told her he knew someone who would blow up cars for fifty dollars, and that on one of these occasions he had also shown her a newspaper article concerning the second bombing incident. While her statement does go to the determination of a fact in

---

1. This court is most concerned about what appears to be an inordinate number of appeals involving prosecutorial misconduct by the office of the United States Attorney for the District of Arizona.

issue, i. e., whether or not appellant was involved in the second bombing, the facts underlying her impression do not rationally lead to the conclusion made. Her "understanding" did not aid the triers of fact in their understanding of what the appellant had said and done. The jury could draw its own conclusions from what Carter had already testified. Her additional analysis was irrelevant and should not have been admitted.

■ A trial court's ruling to allow lay opinion testimony should not be disturbed absent a clear abuse of discretion. *Unitec Corporation v. Beatty Safeway Scaffold Co. of Oregon*, 358 F.2d 470 (9th Cir. 1966). The type of error involved in this case does not rise to a level of constitutional dimension especially where, as here, found in the midst of overwhelming evidence of appellant's guilt. *See, Valle–Valdez, supra.* Any error committed by the trial court in admitting the witness' testimony is harmless.

## IV  DID DOUBLE JEOPARDY BAR RETRIAL OF THE DEFENDANT.

■ The appellant contends that his retrial should have been barred by the Double Jeopardy Clause of the Fifth Amendment because the mistrial was provoked by intentional or grossly negligent prosecutorial misconduct, and because the Government sought to utilize the mistrial to strengthen its case at the retrial (by getting admitted into evidence mockups of destructive devices that had not even been in existence at the time of the first trial and by seeking to admit evidence that had been excluded from the first trial).

■ The burden is on the appellant to establish the facts supporting his contention that his retrial violated the Double Jeopardy Clause of the Fifth Amendment. *See United States v. Rumpf*, 576 F.2d 818 (10th Cir. 1978). The general rule is that this clause of the Constitution does not preclude retrial even where prosecutorial misconduct constituted the reversible error at the first trial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

The court has stated that "reprosecution may be barred if the motion was induced by prosecutorial misconduct 'intentionally calculated to trigger this declaration of a mistrial.'" *United States v. Sanders*, 591 F.2d 1293, 1296 n.4 (9th Cir. 1979) (citations omitted); *United States v. Calderon*, 618 F.2d 88, 90 (9th Cir. 1980); *Moroyoqui v. United States*, 570 F.2d 862, 864 (9th Cir. 1977), *cert. denied*, 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 86 (1978). Here the trial judge specifically found that the Government's misconduct was neither intentional nor grossly negligent. Such a finding should be reversed only where clearly erroneous. *Moroyoqui, Calderon* and *Sanders* cases, supra. The record on appeal does not show any such clear error.

The judgment of the lower court is affirmed.