UNITED STATES of America,
Plaintiff–Appellee,

v.

Samson Andrew GILLETT, aka Sammy
Gillett, Defendant–Appellant.

No. 99–50604.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2001.

Filed May 14, 2001.

Gail Ivens, Glendale, California, for the
appellant.

Michael J. Raphael and Robert J. Borthwick, United States Attorney's Office, Los Angeles, California, for the appellee.

Before: HUG, and B. FLETCHER, Circuit Judges, and ILLSTON,[1] District Judge.

## OPINION

HUG, Circuit Judge:

Samson Andrew Gillett appeals his conviction for embezzlement from a federal reserve bank in violation of 18 U.S.C. § 656. In this case we must decide whether an employee of an armored car service, which contracted with a bank to transport night deposit bags from the bank's branches to the bank's cash vault, can be prosecuted under 18 U.S.C. § 656 which proscribes theft by a bank officer, director, agent, employee, or other person "connected in any capacity with" any federally insured bank. We conclude that there was a sufficient connection between Gillett and the bank to justify the embezzlement charge. The decision of the district court is affirmed.

## BACKGROUND

Gillett worked for Brinks armored car service which contracted with Bank of America to transport night deposit bags by armored vehicle from approximately twenty Bank of America branches in Orange County, California to a Bank of America cash vault in Garden Grove, California. Merchants who bank with Bank of America and have holiday or weekend deposits take their bank bags with the enclosed checks and cash to a night depository.

Between 9 p.m. Saturday night and 5 a.m. Sunday morning, Brinks employees enter each bank and collect the night deposit bags out of the night depository safe. If the following Monday is a bank holiday, Brinks employees enter the bank branches between 9 p.m. Sunday evening and 5 a.m. Monday morning.

Each Brinks "run" is staffed by a three-person team consisting of a driver, guard, and messenger. Bank of America provides the Brinks employees with keys to the bank branches as well as combinations to the night deposit safes. While inside the branch, Brinks employees count the night deposit bags, place them in a larger sealed bag, and record the total number of night deposit bags picked up from each branch on a manifest. At the end of the run, the sealed bags are delivered to the cash vault where Bank of America employees count the individual night deposit bags to verify that they conform with the Brinks manifest.

At the trial, Bank of America referred to the weekend service as "third party service;" this is because Bank of America entrusts a third party, Brinks, to perform a function performed by Bank of America's employees on weekdays. Because Brinks employees take custody of Bank of America's money, Brinks is contractually responsible if the money is lost or stolen while in its care.

Between October 1995 and April 1996, Bank of America received reports of missing weekend deposits from several merchants along Brinks route number 409. The total amount taken during this period was approximately $34,000.00. Because the missing money could be traced to a specific Brinks route, attention focused on the team that staffed route 409. Gillett

---

1. The Honorable Susan Y. Illston, United States District Judge for the Northern District of California, sitting by designation.

was a guard on route 409 during the time the deposits were missing. The FBI interviewed Gillett at which time he made statements inculpating himself in the thefts.

A grand jury charged Gillett with eleven counts of bank theft under 18 U.S.C. § 656. The district court conducted a jury trial. At the conclusion of the trial Gillett moved for acquittal under Rule 29. The district court denied Gillett's motion. The jury returned a guilty verdict on all eleven counts of the indictment. Subsequently, the district court sentenced Gillett to 18 months imprisonment and restitution in the amount of $34,000.00.

The district court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

## ANALYSIS

The jury convicted Gillett under 18 U.S.C. § 656 which provides in pertinent part:

> Whoever, being an officer, director, agent or employee of, *or connected in any capacity* with any Federal Reserve bank, member bank, ... national bank, [or] insured bank, ... embezzles, ab-

stracts, purloins or wilfully misapplies any of the moneys, funds or credits of such bank ... shall be fined not more than $1,000,000, or imprisoned not more than 30 years, or both ...

18 U.S.C. § 656 (emphasis added).

■ On appeal, Gillett contends that as an employee of Brinks armored car service, a third party contractor of Bank of America, he was not "connected in any capacity" with Bank of America, and thus cannot be convicted of embezzlement under section 656.

The phrase "connected in any capacity" can be found in several federal statutes that punish theft, embezzlement, or misapplication by individuals in positions of trust, including 18 U.S.C. §§ 656, 657,[2] and 1006.[3] The phrase has been interpreted broadly by this and other circuits. For example, in *United States v. Rice*, 645 F.2d 691 (9th Cir.1981), a consultant with a written contract to originate mortgage loans for Allstate Savings and Loan Association ("Allstate") appealed his conviction under 18 U.S.C. § 1006. *Id.* at 693. The defendant contended that because he was not an officer or director of Allstate he was not "connected in any capacity," and thus

**2.** 18 U.S.C. § 657 provides in pertinent part:

> Whoever, being an officer, agent or employee of or connected in any capacity with ... any lending, mortgage, insurance, credit or savings and loan corporation ... the accounts of which are insured by the Federal Deposit Insurance Corporation ... embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both ...

**3.** 18 U.S.C. § 1006 provides in pertinent part:

> Whoever, being an officer, agent or employee of or connected in any capacity with ... any lending, mortgage, insurance, credit or

savings and loan corporation ... the accounts of which are insured by the Federal Deposit Insurance Corporation ... makes any false entry in any book, report or statement of or to any such institution, or without being duly authorized, draws any order or bill of exchange, makes any acceptance, or issues, puts forth or assigns any note, debenture, bond or other obligation, or draft, bill of exchange, mortgage, judgment, or decree, or, with intent to defraud the United States or any agency thereof, or any corporation, institution, or association referred to in this section, participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such corporation, institution, or association, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Section 1006 was inapplicable. *Id.* We rejected the defendant's argument and concluded that the defendant was sufficiently connected with the savings and loan association. In doing so, we stated that section 1006 should be construed broadly. *See id.; United States v. Meeks,* 69 F.3d 742, 744 (5th Cir.1995) (stating that the plain language of section 656 "provides no basis for a narrow reading of its scope" and "[t]he words connected in any capacity ... comprise a broad modifying phrase"); *United States v. Coney,* 949 F.2d 966, 967 (8th Cir.1991) (finding that defendant was "clearly connected" to bank in a capacity "captured by the broad language of section 656"); *United States v. Prater,* 805 F.2d 1441, 1446 (11th Cir.1986) (finding that phrase "connected in any capacity" under section 657 "should be construed broadly to effectuate congressional intent by protecting federally insured lenders from fraud"); *United States v. Ratchford,* 942 F.2d 702, 705 (10th Cir.1991) (stating that section 657 should be given a broad interpretation).

■ When the defendant is not directly employed by the insured bank, we focus on the relationship between the employing entity and the bank's business in deciding whether there is a sufficient connection under section 656. *See Fulton,* 640 F.2d at 1106. In *Fulton,* we upheld the section 656 conviction of an employee of a mortgage company that was a wholly-owned subsidiary of an insured bank. *Id.* at 1106. We noted that the mortgage company handled all the real estate functions traditionally performed by the bank's escrow department and acted as a servicing agent for many escrow accounts opened through the bank. *Id.* While the defendant was not the manager of the escrow company she handled the escrow accounts, had access to company checks, and was able to issue checks without obtaining supervisory authorization. *Id.* Although she did not have unlimited discretion, "she was employed in

a position of trust which enabled her to gain access to bank funds." *Id.* (internal quotations omitted).

In considering a case with facts very similar to the current action, the Eighth Circuit held that an employee of an armored car company was connected with a bank as required under 18 U.S.C. § 656. *See Coney,* 949 F.2d at 966. In *Coney,* an armored car company contracted with the Minneapolis Federal Reserve Bank to deliver money to other financial institutions. *Id.* at 967. The defendant was a "messenger" for the armored car service responsible for accepting and distributing the armored car's currency and cargo. *Id.* Coney received a bag containing $25,000 and was responsible for delivering the bag to a bank. *Id.* Instead, Coney stole the money when the person responsible for signing out each day's cargo neglected to have Coney sign for the bag. *Id.* The Eighth Circuit upheld Coney's section 656 conviction finding that "[a]s an employee of the armored car company responsible for transporting the bank's currency, Coney was personally entrusted with Federal Reserve funds." *Id.* Accordingly, the court found that Coney was "clearly connected" to the bank. *Id.*

■ Gillett attempts to distinguish *Coney* because the defendant in that case stole Federal Reserve Bank money. Gillett argues that because Brinks was responsible for the loss incurred, "the integrity of the Federal Reserve or the Federal Deposit Insurance Corporation" was not affected. However, 18 U.S.C. § 656 does not require that the money taken be federally insured funds. *See United States v. Mouton,* 617 F.2d 1379, 1383 (9th Cir. 1980). "The obvious congressional intent [of section 656] is to safeguard the integrity of insured banks," and, therefore, "as long as the misapplied moneys are assets

of an insured bank, it is irrelevant whether they are specifically insured." *Id.*

The Fifth Circuit has considered a similar issue: whether employees of independent contractors can be prosecuted under 18 U.S.C. § 656. *See Meeks,* 69 F.3d at 742. In *Meeks,* defendants were employees of a locksmith company which contracted with a bank to maintain the bank's safe deposit boxes. *Id.* at 743. The court began its analysis by noting that the purpose of 18 U.S.C. § 656 is "to preserve and protect the assets of banks having a federal relationship." *Id.* at 744 (quoting *Garrett v. United States,* 396 F.2d 489, 491 (5th Cir.1968)). The court found that the defendants were sufficiently connected with the bank because they were "employees of an independent contractor that provided the bank with a necessary service, which required (and permitted) its employees to be in a restricted area of the bank." *Id.*

Finally, in *United States v. Edick,* 432 F.2d 350, 351–52 (4th Cir.1970), the Fourth Circuit found that a manager of the proof department of a wholly owned subsidiary of a holding company with a controlling interest in several banks, including the bank in question, was within the class of persons that could be reached under 18 U.S.C. § 656. Like Gillett, the defendant argued that because his immediate employer was the holding company, a separate corporate entity and not the bank, he was not within the defined class of section 656. *Id.* at 352. The court rejected this argument finding that the defendant was sufficiently connected to the bank because he had done all the bank's proofing and at the direction of bank officials had performed all of the related services traditionally performed by the bank's proofing department. *Id.*

In this case, Brinks armored car service and its employees provided a necessary service to Bank of America. Gillett was given keys so that he could enter into restricted areas of the bank and remove bank deposit bags. He had access to areas of the bank that an unconnected person would be unable to enter. Gillett performed a function which was normally performed by Bank of America's employees on weekdays. As an employee of the armored car service responsible for transporting Bank of America's currency, Gillett was entrusted with Federal Reserve funds. Based on these facts, we believe Gillett was clearly connected to Bank of America.

██ In considering this issue for the first time, we are guided by those cases that have broadly construed the phrase "connected in any capacity" in section 656 and in other statutes that punish theft, embezzlement, or misapplication. By construing the phrase broadly we will "effectuate congressional intent to protect federally insured lenders from fraud." *Ratchford,* 942 F.2d at 705. Accordingly, we affirm Gillett's conviction under 18 U.S.C. § 656.

AFFIRMED.